JOHN S. LEONARDO
United States Attorney
District of Arizona
DAVID PIMSNER
KRISTEN BROOK
Assistant U.S. Attorney
Arizona State Bar No. 007480
Arizona State Bar No. 023121
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona  85004
Telephone:  602-514-7500
David.Pimsner@usdoj.gov
Kristen.Brook@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-14-00191-PHX-DGC |
| Plaintiff, | **GOVERNMENT'S RESPONSE TO DEFENDANT'S INITIAL MOTION TO DISMISS** |
| vs. | (Filed Under Seal) |
| Marc Turi, and Turi Defense Group, | |
| Defendants. | |

The United States of America, through undersigned counsel, respectfully responds to Defendant's Initial Motion to Dismiss Indictment. This request is supported by the following Memorandum of Points and Authorities.

Respectfully submitted this 20th day of August, 2014.

JOHN S. LEONARDO
United States Attorney
District of Arizona

DAVID PIMSNER
KRISTEN BROOK
Assistant U.S. Attorneys

## FACTS:

Defendant Turi and Defendant Turi Defense Group are charged by Indictment with two counts of Submitting False Documents to a Government Agency, in violation of Title 18 U.S.C. §1001(a)(3) and two counts of Violations of the Arms Export Control Act (AECA), in violation of Title 22 U.S.C. § 2778(c) and 22 C.F.R. §§ 126.1, 127.2, 127.3. These four charges relate to false statements made by Defendant Turi and Defendant Turi Defense Group between February and July 2011, during which time Defendants were denied permission by the Department of State to broker weapons to Libya.

On March 29, 2011 and June 11, 2011, Defendants, knowing they were denied permission to broker weapons to Libya, made False Statements to a Government Agency and acted in violation of AECA when they submitted license application to the Department of State for permission to broker weapons and falsely listed the end user of the weapons to be the Government of Qatar and the Government of United Arabs Emirates, respectively.  In fact, Defendants knew that the actual intended end user of the listed USML items, in both the March 29, 2011 and June 11, 2011 applications, were individuals in Libya.

I.     **The Indictment is Not Multiplicitous as the Counts of the Indictment Charge the Defendant with Separate Offenses for Separate Crimes and Would Not Violate the Double Jeopardy Clause Should the Defendant Stand Convicted of the Indictment.**

As a threshold principle, Courts first look to determine whether one offense as charged requires proof of a fact that the other does not in order to determine whether two charges would punish the same offense in violation of the Double Jeopardy Clause.

*U.S.C.A. Const. Amend.5.* This analysis is predicated on the statutory elements and not a factual analysis. *Id.* The Ninth Circuit has held that the rule against multiplicity prohibits the charging of a single offense in several counts of an indictment and that this rule is intended to prevent multiple punishments for the same act. *United States v. Hurt*, 795 F.2d 765, 774-75 (9th Cir. 1986).

Since a conviction under multiplicative counts would constitute a double jeopardy violation, courts have analyzed multiplicity and double jeopardy issues in a nearly identical fashion. See *Whalen v. United States*, 454 U.S. 684, 690-91 (1980). Offenses are considered separate and not considered multiplicative if each requires proof of a fact that the other does not. *Blockburger v. United States*, 284 U.S. 299, 306 (1931); *see also United States v. Sehnal*, 930 F.2d 1420, 1426 (9th Cir. 1991). In *Blockburger*, the Supreme Court established how to determine whether different statutes punish the same conduct. *Id.* at 304. The *Blockburger* test states that if "each provision requires proof of an additional fact which the other does not" then there are two offenses of which the defendant can be convicted. *Id.* Further, different counts in an indictment are not multiplicitous where it can be shown that Congress unambiguously intended to create separate offenses and allow for multiple or cumulative punishment to be imposed for the same act. *Missouri v. Hunter*, 459 U.S. 359 (1983); *Albernaz v. United States*, 450 U.S. 333, 336 (1981).

**A. All Counts Require different Predicate Facts and are Not Multiplicitous**

The thrust of the Defendant's multiplicity argument is that the offenses charged in the Indictment in Counts 1 and 3 as violations of the Arms Export Control Act (the

AECA, 22 U.S.C. §2278(c) (Counts 1 and 3) and in Counts 2 and 4 as violations of 18 U.S.C. §1001 constitute the same offense since "there are only two alleged false statements" and that "[e]ach alleged false statement is charged as a violation of § 1001 and § 2778." (Defendant's Initial Motion to Dismiss Indictment (the "Motion to Dismiss," p.5). This assertion is mistaken and the argument misses the mark, for the Indictment alleges violations of two distinctly different offenses – (i) a violation of the AECA in the form of illegal arms brokering and (ii) submission of a false statement in furtherance of that offense -  both carried out at two different time periods (March and June, 2011). The premise of the Motion to Dismiss is that the Indictment charges only a single "false statement" crime twice over. As further outlined below, the Counts at issue will require evidence of different predicate facts to prove different elements of the offenses in question and, hence, are not multiplicitous.

As noted above, where each offense requires proof of different facts, there is no multiplicity and separate punishment may be imposed in relation to each offense. *Blockburger v. United States*, 284 U.S. 299 (1932). The first question for the Court is whether each statute requires proof of a fact that the other does not. *United States v. Wheeler*, 753 F.3d 200, 209 (D.C. Cir. 2014.). If each statute does, neither statute is a "lesser included offense of the other," and the Double Jeopardy Clause is no bar to sentencing under both, because statutes that require different proof penalize different conduct. *Id. United States v. Mahdi*, 598 F. 3d 883, 888 (D.C. Cir. 2010); *United States v. McLaughlin,* 164 F.3d 1, 8–9 (D.C.Cir.1998).

Counts 2 and 4 allege that the Defendant submitted false statements to U.S.

Department of State on two different occasions in connection with two different applications to broker weapons in violation of 18 U.S.C. § 1001.  The essence of that false statement as charged is that the Defendant falsely stated who was to be the actual end user of the weapons to be brokered: the Government of Qatar (Count 2) and the Government of the United Arab Emirates (Count 4).

To be convicted under Title 18 U.S.C. § 1001, Fraud or False Statements or Entries, the government must prove the predicate facts to demonstrate that (i) the defendant knowingly made a false statement (2) that is material (3) to a matter within the jurisdiction of any United States department or agency.  The false statement need not be made directly to the government agency.  *United States v. Green*, 745 F.2d 1205, 1208-10 (9th Cir. 1984).  There is no requirement that the defendant acted with the intention of influencing the Government Agency.  *United States v. Yermian*, 468 U.S. 63, 73 (1984).  And the Defendant must act "willfully" under Section 1001,and have a specific intent to make a false statement.  *United States v. Heuer*, 4 F.3d 723, 732 (9th Cir. 1993).

Counts 1 and 3, however, allege broader violations by Defendant of a regulatory offense, that being the Arms Export Control Act, 22 U.S.C. § 2278(c), by actively engaging in the business of brokering arms to individuals in Libya, all the while withholding this material fact from the regulatory agency (the U.S. Department of State) throughout the process of pursuing two different fraudulent applications to broker arms to the Government of Qatar (Count 1) in March 2011 and the Government of the United Arab Emirates (Count 3) in June 2011.

By its very nature, the AECA, unlike 18 U.S.C. § 1001, is designed to allow the

government to fulfill a regulatory function; violation of the AECA is, thus, a regulatory crime. Under the AECA, the Defendant is required to provide the government with all the materials and relevant facts underlying any arms brokering application submitted for approval.    Under 18 U.S.C. §1001 Congress criminalized the act of making an affirmative false statement to government agencies. This statute is designed to address a specific offense of a false or fraudulent statement and not conduct designed to defeat a regulatory agency. On the other hand, the AECA was enacted by Congress to enforce a broader and wider reaching regulatory purpose, and the implementing regulations (which form the basis of the violations charges in Counts 1 and 3) reflect that purpose.

The pertinent and relevant provision of the AECA, 22 U.S.C. § 2778(a)(1) reflects that purpose:

> In furtherance of world peace and the security and foreign policy of the United States, the President is authorized to control the import and the export of defense articles and defense services and to provide foreign policy guidance to persons of the United States involved in the import and export of such articles and services. The President is authorized to designate those items which shall be considered as defense articles and defense services for the purposes of this section and to promulgate regulations for the import and export of such articles and services. The items so designated shall constitute the United States Munitions List.

The AECA further requires that every person engaging in the "business of brokering activities with respect to the manufacture, export, import, or transfer of any defense article" (such as weapons) must do so only after registering with the U.S. government and cannot engage in arms brokering without a license. 22 U.S.C. § 2778(b)(1)(A)(ii) & (iii).

Underlying Section 2778(c), therefore, is the fundamental premise that the government needs all the material facts in order to make considered decision in the arms

brokering registration process, including whether to approve a brokering application pursuant to 22 C.F.R. §129.6.  The Defendant, thus, violated the AECA and associated regulations by failing to provide the government with all relevant and material information necessary to make a regulatory decision – such as wilfully omitting a material fact that he was already in the arms were intended for individuals in Libya, in violation of 22 C.F.R. §127.2.  This conduct represents a different violation of the law than that involved in making an affirmative false statement.

Accordingly, to be convicted under Section 2778(c) of the AECA, and 22 C.F.R. Sections 127.2 & 127.3 (Misrepresentation and Omission of Facts), the government must prove predicate facts to demonstrate that (1) the defendant submitted an export control document to a government  agency as part of a registration or license application or required report under the provisions of Section 2778; (2) the export control document contained a false statement or misrepresentation or **omitted a material fact** required to be stated therein or necessary to make the statements not misleading; and (3) the Defendant acted willfully.

In considering the Indictment in the instant case, Counts 1 and 2 - and Counts 3 and 4 - each rest on different predicate facts to prove different elements of each offense. Count 1 alleges that Defendant submitted an export control document "containing a false statement or misrepresenting or omitting a material fact for the purpose of exporting any defense article...for which a license or approval is required" by the International Traffic in Arms Regulations (ITAR), 22 C.F.R. Section 127.2.  As noted above, Count 1 alleges a regulatory offense whereby it is alleged that the Defendant willfully withheld a material

fact (or facts) which was required or needed in order for the government to exercise its regulatory power in making decisions with regard to the brokering of defense articles (i.e. the sale of weapons to individuals in Libya). In this regard, the third element of this offense is directly relates to the Defendant's "omission of a material fact."

By contrast, Count 2 specifically alleges that Defendant made an affirmative false statement to the Directorate of Defense Controls (DDTC) though falsely representing that the Defendant wanted to broker the sale of certain ITAR controlled defense articles (i.e., weapons) to the Government of Qatar as the true end user. While Count 2 may well refer to a similar act or conduct by the Defendant, namely falsely and fraudulently stating the end user of the weapons in his registration or application for a license to broker weapons, Count 1 relates to one part of the larger regulatory offense, namely brokering the specified weapons to individuals in Libya all the while omitting that material fact from the DDTC. Thus, Count 1 requires proof that Defendant willfully "omitted a material fact required to be stated therein" in violation of Title 22 Section 2778(c), which element of the offense requires proof of a different set of facts than a violation of 18 U.S.C. §1001. It is well worth noting in this regard that identical evidence can be used to prove violations of two statutes without violating *Blockburger v. United States,* 284 U.S. 299 (1932). *See Unites States v. Swafford*, 512 F.3d 883, 884 (6th Cir. 2008).

To put it in other words, with regard to Counts 1 and 2, the Defendant was actually engaged in brokering arms to individuals in Libya while representing he was only dealing with the Government of Qatar. As such, proof of Count 1 will require predicate facts that the Defendant omitted a material fact when he failed to inform the DDTC that both his

then current intent and actions centered on brokering the weapons in question to individuals in Libya.   Omission of this critical and material fact to the appropriate government regulators is a key element of Count 1.   The Defendant willfully omitted information needed by the DDTC to make an informed regulatory decision, namely that the real and intended end user for the weapons in question were individuals in Libya, not the Government of Qatar.   For Count 2, the government is required to prove that the Defendant made a specific affirmative false statement when he stated in writing in his "export control document, the registration and application for a license to broker weapons, that the Government of Qatar was the end user of the ITAR controlled weapons.   While the Defendant's false statement that the weapons were intended for the Government of Qatar may well be part of the broader regulatory offense (violation of the AECA) – this does not make these offenses identical or "only two alleged false statements" charged twice "as a violation of both §1001 and §2778." (the Motion to Dismiss, P. 5).

This same legal analysis applies equally to the defeat any claim of multiplicity with regard to Counts 3 and 4.   The primary factual difference being that Counts 3 and 4 relate to a different time period (June 2011) and a different scheme to falsely represented to the DDTC that the Defendant was brokering weapons to the Government of the United Arab Emirates as the end user and not to individuals in Libya (conduct parallel to that alleged in Counts 1 and 2) in violation of both 22 U.S.C. § 2278(c) and 18 U.S.C. § 1001.

By means of example, the jury could find under the predicate facts for the charged Indictment that the Government did not prove beyond a reasonable doubt that Defendant

falsely stated the weapons were for Government of Qatar - under a potential defense theory that the weapons were to be warehoused in Qatar before they were transferred elsewhere.  Likewise, based upon the same presentation of facts, the jury could find that the Defendant **did** omit a material fact, as the weapons were intended for Libya rebels not for the Government of Qatar.  This example is merely a means to highlight that different predicate facts underline both offenses.

The Ninth Circuit has consistently upheld counts as not being multiplicitous even though the separate counts involve the same scheme.  *United States v. Poliak*, 823 F.2d 371, 372 (9th Cir. 1987) (A...each separate transaction of a check-kiting transaction constituted a separate count and different and separate execution of the scheme to defraud the banks); *United States v. Olsowy*, 836 F.2d 439, 442 (1987).  In determining whether a count requires proof of a fact which the other does not, the elements of the offense are determinative, even if there is substantial overlap in their proof.  *United States v. Solomon*, 753 F.2d 1522, 1527 (9th Cir. 1985).  Using the *Blockburger* test, the statutes charged in the counts of the indictment must be construed as proscribing two separate offenses because each provision requires proof of a fact that the other does not.  Clearly, a different set of predicate facts must be proven in each of these Counts since the affirmative false statement was not the same as the material omission.

The Court of Appeals for the District of Columbia held in *Wheeler* that the Double Jeopardy Clause bars a sentencing court from imposing multiple punishments for the same conduct absent a clear indication that Congress intended that result. *Wheeler* at 209. *See Ball v. United States,* 470 U.S. 856, 861, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985);

*United States v. Mahdi,* 598 F.3d 883, 887–89 (D.C.Cir.2010).  As outlined above, in this instance, Congress enacted two different sets of laws to address two different types of offenses: (i) the regulatory AECA, and its implementing regulations at issue in this case, which was intended to address violations of this regulatory framework to control the trade and sale of defense articles, such as weapons, and (ii) the false statement statute of 18 U.S.C. § 1001 to address specific fraud in any false statement and entry submitted to any government entity, whether as a separate offense or as part of a larger scheme to violate the law, such as a regulatory statute like the AECA.

**B. If the Court Finds that the Counts are Multiplicitious, Dismissal of the Indictment is Not the Remedy, Rather Electing to Proceed on Certain Counts is the Remedy.**

The Government does not believe that this indictment is multipicitous.  With that said, if the Court finds that the indictment is multipicitous, and that the defendant is prejudiced or would result in multiple sentences for a single offense in violation of double Jeopardy Clause then **multiplicity is not necessarily fatal to an indictment**. *United States v. Lynn*, 636 F.3d 1127, (9th Cir. 2011).

In *Lynn*, the Ninth Circuit held that a multiplicitous indictment and subsequent conviction for receipt and possession of child pornography was cured by vacating one conviction and remanding the other for resentencing.  *Id*. at 1136.  The Court went on to explain that the "government must allege and prove distinct conduct underlying each charge, whether the conduct underlying each charge occurred on the same or different dates."  *Id*. at 1137.  The Ninth Circuit held that imposition of sentences for both receipt and possession of child pornography violated the Double Jeopardy Clause. The Court vacated Lynn's sentence and remanded to the district court with instructions to "vacate one of Lynn's convictions, allowing for it to be reinstated without prejudice if his other conviction should be overturned on direct or collateral review, and to resentence Lynn

based on the remaining conviction." *Id.*   The court may also require the government to elect to proceed on certain charges.

## II.   The Documents Submitted by Defendant Were in Fact Applications to Obtain a License/Prior Approval to Engage in Brokering Activity.

Defendant asserts as a matter of law that his request for prior approval to conduct brokering activity is not a license application and therefore could not have violated the statutory language of 22 U.S.C. § 2778(c).   However, a review of the statutes and regulations covering brokering activities demonstrates that the documents submitted by defendant were in fact applications to obtain a license/prior approval to engage in brokering activity.   Additionally, the recent amendments to the Code of Federal Regulations still require that a registered broker receive authority in the form of a license in order to broker a specific arms transaction.   Accordingly, the defendant's motion should be denied.

### Statutory and Regulatory Framework

The Arms Export Control Act (AECA), 22 U.S.C. § 2778 et seq., was amended in 1996 (Pub. L. 104-164) to provide for the regulation of brokering activities.   Specifically, 22 U.S.C. § 2778(b)(1)(A)(ii)(I) authorized the implementation of regulations for every person engaged in the business of brokering activities and required they register with the United States Government.   The next year, implementing regulations relating to the business of conducting brokering activities were added in 22 C.F.R. Part 129.   62 FR 67276.

No person may engage in the business of brokering activities without a license as

set forth in 22 U.S.C. § 2778(b)(1)(A)(ii)(III).  22 U.S.C. § 2778(c) made it unlawful for any person to willfully violate any provision of this section or any rule or regulation issued under this section or to "willfully, in a registration or license application or required report, make[] any untrue statement of a material fact or omit[] to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . . ."  Registering as a broker is a separate requirement from obtaining a license to broker a specific transaction.  22 C.F.R. §§129.1 (2011).  Each brokering transaction requires the submission of certain information to the Directorate of Defense Trade Controls (DDTC).  22 C.F.R. §§129.7 (2011).

In the regulations relating to the "Registration and Licensing of Brokers," 22 C.F.R. Part 129, in effect in 2011 at the time of the conduct alleged herein, the term license and prior approval were interchangeably used to describe the process for obtaining approval to conduct brokering activities.  22 C.F.R. §129.1 (2011) entitled "Purpose" provided in part that "no person may engage in the business of brokering activities without a **license** issued in accordance with the Act." (Emphasis added).  22 C.F.R. §129.6 (2011) entitled "Requirement for **License/Approval**" specifically required that "[n]o person may engage in the business of brokering activities without the **prior written approval (license)** of . . . the Directorate of Defense Trade Controls . . ." (emphasis added).  A court may clarify a word's meaning by considering surrounding words and phrases under the maxim of *noscitur a sociis*.  *United States v. Stevens*, 559 U.S. 460, 474 (2010).  It is clear from the plain language of the regulation and the association of the terms that the term license and prior approval were synonymous and

interchangeably used throughout the brokering regulations.

The information required for each approval/license is set forth in 22 C.F.R. §129.7, which is also entitled "**Prior Approval (License)**" (emphasis added). 22 C.F.R. §129.7(c) and (d) set forth the information required to be submitted to obtain authority to conduct brokering activities and included the following:

> (c) Requests for approval of brokering activities shall be submitted in writing to the Directorate of Defense Trade Controls by an empowered official of the registered broker; the letter shall also meet the requirements of § 126.13 of this subchapter.

> (d) The request shall identify all parties involved in the proposed transaction and their roles, as well as outline in detail the defense article and related technical data (including manufacturer, military designation and model number), quantity and value, the security classification, if any, of the articles and related technical data, the country or countries involved, and the specific end use and end user(s)."

On March 29, 2011 and June 11, 2011, the defendant acted to obtain an approval/license from DDTC to broker weapons to Qatar and UAE, respectively. With the exception of the false statements and material omissions contained therein, the defendant's written application as set forth in Exhibits 1 and 3 of the defendant's motion complied with the requirements to obtain authority to broker a specific transaction from the DDTC.

Once a registered broker applied for prior approval/license to conduct brokering activities, 22 C.F.R. §129.7 (2011) provided that:

> (b) The requirements of this section for prior approval are met by any of the following:

. . .
(2)  A written statement from the Directorate of Defense Trade Controls approving the proposed activity or the making of a proposal or presentation.

DDTC's response set forth in Exhibit 2 of the defendant's motion was issued pursuant to 22 C.F.R. §127 and labeled as a "Prior Approval of Brokering Activity Related to 22 CFR 129.7." The authority granted by DDTC was in accordance with requirements set forth in 22 C.F.R. §129.7(b)(2). The absence of the term license on the document does not alter the nature of the authorization. Additionally, 22 C.F.R. Part 129 (2011) is replete with examples of where the term license and prior approval are jointly and interchangeably used.[1]

The defendant was charged in Counts 1 and 3 with making a false statement and material omission in his license application to conduct brokering activities in violation of 22 U.S.C. § 2778(c) and 22 C.F.R. §§126.1, 127.2 and 127.3. The government contends that the defendant made an untrue statement of a material fact and omitted a material fact required to be stated therein when he represented that the weapons at issue were intended for the Qatar Ministry of Defense and UAE Ministry of Defense, respectively, and when he omitted that the weapons were in fact intended for end users in Libya.

Pursuant to 22 C.F.R. § 127.3, any person who willfully:
(b)  In a registration, license application or report required by § 38 or § 39 of the Arms Export Control Act (22 U.S.C. 2778 and 2779) or by any rule or regulation issued under either section, makes any untrue statement of a material

---

[1] These include 22 C.F.R. §§ 127.1 (a)(4) and, §127.2(a) &(b)(13).

- 15 -

1
2
3

> fact or omits a material fact required to be stated therein or
> necessary to make the statements therein not misleading, shall
> upon conviction be subject to a fine or imprisonment, or both,
> as prescribed by 22 U.S.C. 2778(c).

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

The statutory and regulatory scheme of brokering arms requires that a person registered as a broker submits certain information and receive approval from DDTC before conducting brokering activities.  When called upon to interpret a federal statute or the regulations implementing it, "we apply traditional rules of construction and, where required, administrative deference." *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 392 (9th Cir. 2011).  "The first step in construing the meaning of a statute is to determine whether the language at issue has a plain meaning." *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008). "When interpreting a statute, words and phrases must not be read in isolation, but with an eye toward the 'purpose and context of the statute.' " *United States v. Petri*, 731 F.3d 833, 839 (9th Cir. 2013) (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006)). An interpretation that gives effect to every clause is generally preferable to one that does not. *Cf. Marx v. Gen. Revenue Corp.*, 133 S.Ct. 1166, 1177, 185 L.Ed.2d 242 (2013).  Therefore, to ignore the term "license," when used in conjunction with the word "approval," would be to ignore the intended context of the statutes and regulations.

24
25
26
27
28

The government submits that at the time of the defendant's alleged conduct, the regulations treated "prior approval" and "license" as having the same meaning which was consistent with the overall statutory and regulatory scheme that required a license to conduct brokering activities.  It is a fundamental canon of statutory construction that the

words of a statute must be read in their context and with a view to their place in the overall statutory scheme.  Courts seek to "interpret [each] statute 'as a symmetrical and coherent regulatory scheme,' and 'fit, if possible, all parts into an harmonious whole.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, (2000) (citations omitted).  Thus, the C.F.R. provisions associated with the "Registration and Licensing of Brokers" (Part 129) and those associated with "Violations and Penalties" (Part 127) should be interpreted "to give effect to every clause."  Accordingly, the terms "license" and "approval" (as used interchangeably in Part 127 and Part 129) should be read to have the same meaning and effect in considering whether the Defendant was required, under 22 C.F.R 127.3, not to withhold or omit a material fact to the DDTC in the regulatory approval process – whether or not it was for an "approval" or a "license."

Defendant relies on the general definition of a "license" found in 22 C.F.R. §120.20 (2011) to suggest that defendant's request to broker arms was not a license application.  Defendant is incorrect.  At the time of the alleged conduct, this definition was used only in the context of actually conducting an export or temporary import of defense articles set forth in the International Traffic in Arms Regulations.  Defendant's definition was not used in the context of brokering.  Defendant is correct that the brokering regulations have recently been amended and they now differentiate between "license" and "other approval."  However, an approval/license has historically been required by DDTC to broker a specific arms transaction.

Currently, 22 C.F.R. § 120.20, entitled "License or other approval," now provides:

License means a document bearing the word "license" issued by the Deputy Assistant Secretary of State for Defense Trade Controls, or his authorized designee, that permits the export, temporary import, or brokering of a specific defense article or defense service controlled by this subchapter.

Other approval means a document issued by the Deputy Assistant Secretary of State for Defense Trade Controls, or his authorized designee, that approves an activity regulated by this subchapter (e.g., approvals for brokering activities or retransfer authorizations), or the use of an exemption to the license requirements as described in this subchapter.

By definition, brokering specific defense articles requires a license.   Any brokering activity requires other approval.  22 C.F.R. § 129.4(a) now provides that:

Except as provided in § 129.5, no person who is required to register as a broker pursuant to § 129.3 of this subchapter may engage in the business of brokering activities pursuant to § 129.2(b) without first obtaining the approval of the Directorate of Defense Trade Controls.

22 C.F.R. § 129.4(a) is not a material change on the requirement that brokering requires a license or prior approval.

However, it is still a violation if any person willfully "[i]n a registration, license application, or report required by § 38 or § 39 of the Arms Export Control Act (22 U.S.C. 2778 and 2779) or by any rule or regulation issued under either section, makes any untrue statement of a material fact or omits a material fact required to be stated therein or necessary to make the statements therein not misleading," punishable " upon conviction . . .[by] a fine or imprisonment, or both, as prescribed by 22 U.S.C. 2778(c)." 22 C.F.R. §

127.3(b).

The authority to conduct the brokering of specific defense articles, as was defendant's stated purpose in his applications that are at issue, would still receive approval in the form of a license. See 22 C.F.R. §120.20(a) (2014). Even if the court determined that due to the amended regulations, the defendant's applications were not license applications, the defendant was not entitled to submit false information and make material omissions of fact on his request for approval to conduct brokering activities. Both 22 U.S.C. § 2778(c) and 22 CFR § §127.3 prohibit a person from providing false information or material omissions pursuant to any rule or regulation established in accordance with 22 U.S.C. § 2778. Accordingly, if the court determines in the context of the statutory and regulatory scheme that defendant's 2011 applications seeking authority to conduct brokering activities did not constitute license applications, the government could still proceed by amending the indictment to allege his violation of regulations established promulgated pursuant to 22 U.S.C. § 2778.

The AECA was designed to provide DDTC sufficient information to evaluate whether a potential brokering of arms would be in furtherance of world peace and the security and foreign policy of the United States. 22 U.S.C. § 2778(a). Underlying 22 U.S.C. § 2778(c) is the fundamental premise that the government needs all material facts in order to make a considered decision in the arms brokering application process, including whether to issue an approval/license pursuant to 22 C.F.R. §129.6 (2011). The overall regulatory scheme requiring a registered broker to provide truthful information allows DDTC to compete this informed process. Accordingly, under the rules of

statutory construction, defendant's claim must fail.

### III. There Were No Factual Errors in the Grand Jury Process, Nor Cumulative Effect of Errors, and Dismissal of the Indictment is Not Appropriate.

Defendant cites *United States v. Peralta* and incorrectly asserts that in the instant case before the Court, the cumulative effect of errors in the grand jury process require dismissal of the Indictment. (763 F. Supp 14, S.D.N.Y. 1991). Defendant is wrong. In *Peralta*, the District Court for the Southern District of New York held that a prosecutor's legal instructions to grand jury misstated the law on constructive possession of gun and drugs, which combined with government's use of inaccurate hearsay testimony to the grand jury, prejudiced defendants and warranted dismissal of indictment. (*Id.*) At trial in *Peralta*, lead case Detective David Caggiano's testimony was in stark contrast to testimony provided to the grand jury by A.T.F. Special Agent Robert Cuccinelli. (*Id.* at 15.) During the grand jury proceeding, SA Cuccinelli informed the grand jury that his hearsay testimony was based upon "conversations" had with Det. Caggiano and upon "paperwork." The District Court found that SA Cuccinelli's testimony was factually inaccurate as to the most basic facts underlying the case, failed to explain that he only had one conversation with Caggiano and looked at one piece of paper related to the case. (*Id.*) Additionally, the Court found that the Assistant United States Attorney's instructions to the grand jury "seriously misstated applicable law." (Id. at 19.)

The *Peralta* case is not analogous to the case before the Court. Based upon the arguments articulated above, Defendant Turi's due process rights and double jeopardy rights have not been violated. Moreover, Defendant Turi's double jeopardy rights will

1    not attach until the trial jury has been sworn.

2    **CONCLUSION**

3          For the reasons set forth in this response, the Government respectfully requests

4    that the Court deny defendant's initial motion to dismiss.

5          Respectfully submitted this 20th day of August, 2014.

6
                                      JOHN S. LEONARDO
7                                     United States Attorney
                                      District of Arizona
8
9
10                                    DAVID PIMNSER
                                      KRISTEN BROOK
11                                    Assistant U.S. Attorney

     **CERTIFICATE OF SERVICE**
12

13         Due to this document being filed under seal, I hereby certify that on August 20,

14   2014, I filed the attached document with the clerk's office, and sent a copy of the attached

15   document to the following CM/ECF registrants:

16   Jean-Jacques Cabou, Attorney for defendant

17   KB/ceb

18

19

20

21

22

23

24

25

26

27

28