Jean-Jacques Cabou, No. 022835
Thomas D. Ryerson, No. 028073
Alexis E. Danneman, No. 030478
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ  85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
JCabou@perkinscoie.com
TRyerson@perkinscoie.com
ADanneman@perkinscoie.com

Attorneys for Marc Turi and Turi Defense Group

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Cause No. 14-cr-00191-DGC |
| Plaintiff, | |
| v. | **MOTION TO COMPEL DISCLOSURE OF INFORMATION RELATING TO CLAIM OF STATE SECRETS** |
| 1. Marc Turi; and | |
| 2. Turi Defense Group, | |
| Defendants | |

On June 16, 2015, this Court gave the Government 21 days to support its claim of the State Secrets privilege with a declaration comprising "a formal claim of privilege, lodged by the head of the department which has actual control over the discoverable information, after personal consideration by that officer." [Doc. 170 at 3]  Despite several written requests for basic information about whether it has complied with the Court's order, the Government has refused to disclose who provided the declaration and whether it meets the requirements of *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953).  The Government's refusal to confirm basic information about the nature and basis of its claim of State Secrets unconstitutionally denies Defendants the opportunity to submit a critical aspect of the Government's case to "the crucible of meaningful adversarial testing."

LEGAL126894376.2

1  *United States v. Cronic*, 466 U.S. 648, 656 (1984).  The Government's refusal is also at
2  odds with recent practice in other national security matters.

3  　　　　Defendants therefore respectfully move for an order compelling the disclosure of
4  sufficient information to allow the Court, the Defendants, and the public to engage in an
5  "evaluation of the privilege claim."  [*See* Ex. 1 (Memorandum Opinion, *Mohamed v.*
6  *United States*, No. 1:11-CV-00050 (E.D. Va. July 16, 2015)) at 21]  Among other things,
7  Defendants ask that the Court order disclosure of the name of the signer of the sealed
8  document, an unclassified summary of the information presented in the sealed document,
9  and confirmation of whether the document was signed "after actual personal consideration
10 by [the signing] officer."  *See Reynolds*, 345 U.S. at 7-8.  This Motion is supported by the
11 following Memorandum of Points and Authorities.

12 **Memorandum of Points and Authorities**

13 　　**A.　　Introduction and Background**

14 　　　　On July 7, 2015, the defense received notice, via email, that the Government had
15 filed a document under seal, and pursuant to CIPA.  Undersigned counsel then attempted,
16 by subsequent email, to confirm a few basic facts about this sealed document.  In the first
17 email, defense counsel asked the Government Trial Team the following questions: (1)
18 "[Is] the [sealed] document referenced [in the filing notice] the declaration ordered by
19 Judge Campbell with regard to the State Secrets privilege?" and (2) "Why is this
20 document being filed ex parte, under seal, and pursuant to CIPA?"  [Ex. 2 (Email
21 correspondence between J. Cabou and D. Pimsner dated July 7 through July 13, 2015) at
22 2]  The next day, the Government responded that the "declaration is in fact a classified
23 document and Section 4 authorizes that it be submitted ex parte."  [*Id*.]  Attempting to
24 reach a compromise that would avoid motion practice, defense counsel then replied asking
25 only that the "Government advise us promptly of: 1) Who signed the Declaration, and 2)
26 Whether the declaration affirms that the signatory signed 'after personal consideration by
27 that officer.' *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953) (footnotes omitted)."  [*Id*.]
28 Despite this limited request, the Government remained intransigent, sending a reply

which, in its entirety, stated: "As I previously indicated, the content of the declaration is classified." [*Id*. at 1]

Because the compromise request did not ask for the contents of the declaration the defense wrote back, clarifying that the pending request "asked only that [the Government] confirm the signer of the declaration and that . . . it meets the requirement set forth in *Reynolds*." [*Id.*] On July 13th, the Government sent its last email on this matter, refusing to provide any information other than stating that it "believe[s] that [its] response conformed to the Court's order." [*Id.*] The Government's July 13th email ended by explaining that the Government does not "intend to engage with [undersigned counsel] any further on this issue via email." [*Id.*] Both the Government's refusal to provide further information about its claim of State Secrets and the casual tone of its refusal are at odds with the law and with the Department of Justice ("DOJ") policy regarding invocation of the State Secrets privilege.

**B.    The Government Must Disclose to the Defense Sufficient Information to Allow at Least Some Evaluation of Its Claim of Privilege.**

The Sixth Amendment, the First Amendment, and the DOJ's own policies bar the Government's attempt to withhold information about its claim of privilege from the Defendants and the public. The Sixth Amendment, among other things, enshrines the "right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." *Cronic*, 466 U.S. at 656. How can Defendants test the Government's claim of privilege at all, much less "meaningfully" test that claim, if the Government will not tell them anything about it?

Furthermore, court filings in criminal matters are presumptively public. *E.g.*, *In re Special Proceedings*, 842 F. Supp. 2d 232, 238-39 (D.D.C. 2012) (collecting cases and holding that First Amendment "right of access is not limited to the criminal trial itself, but extends to many pre- and post-trial documents and proceedings"). And while there are surely circumstances in which this right of access must yield to other concerns, "[t]he presumption of openness may be overcome only by an overriding interest based on

1  findings that closure is essential to preserve higher values and is narrowly tailored to serve
2  that interest." *Press-Enterprise Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 510 (1984). Most
3  importantly here, when the Government seeks to bar public access to court filings, its
4  "interest [in doing so] is to be articulated along with findings specific enough that a
5  reviewing court can determine whether the closure order was properly entered." *Id.* Here,
6  the Government has simply refused to justify its actions at all. It has provided no
7  information to allow review of its claims.

8  Finally, in addition to being at odds with the Defendants' rights (under the Sixth
9  Amendment), and the rights of others (under the First Amendment), the Government's
10 actions here are at odds with its own policies and procedures. The State Secrets privilege
11 is, among other things, to be invoked only pursuant to "[DOJ] policies and administrative
12 procedures [which] provide greater accountability and reliability in the invocation of the
13 state secrets privilege in litigation." [Ex. 3 (Defs.' Mem. in Support of Mot. to Dismiss
14 Pl.'s Compl. as a Result of the Assertion of the State Secrets Privilege, Exhibit 1 - Decl.
15 of Eric H. Holder, Jr. (the "Holder Declaration") at Ex. 1 (Eric H. Holder, Memorandum
16 for Heads of Department Components: Policies and Procedures Governing Invocation of
17 the State Secrets Privilege (Sept. 23, 2009)) (the "DOJ State Secrets Policy") at 1,
18 *Mohamed v. United States*, No. 1:11-CV-00050 (E.D. Va. May 28, 2014))] The DOJ
19 State Secrets Policy specifically, and appropriately, notes that the State Secrets privilege is
20 properly invoked only in narrow circumstances, only after a recommendation by the
21 "State Secrets Review Committee" "to the Deputy Attorney General, who shall in turn
22 make a recommendation to the Attorney General." [*Id.* (DOJ State Secrets Policy at 2-3)]
23 Even still, "[t]he Department will not defend an assertion of the privilege in litigation
24 without the personal approval of the Attorney General."[1] [*Id.* at 3]

---

[1] It is not at all clear that the Government has complied with this rigorous process in the instant case. The DOJ requirement that the Attorney General approve defense of a State Secrets claim in litigation is separate from the *Reynolds*-imposed requirement that the privilege be founded upon the personal judgment of the head of the agency responsible for the secret.

1   Thus, in the still-pending, well-publicized case of *Mohamed v. Holder*, which
2   challenges certain facets of the Transportation Security Administration's "no-fly list," the
3   Government's claim of State Secrets was supported by a 15-page, public, unclassified
4   declaration by then-Attorney General Holder of the basis for invocation of State Secrets
5   Privilege in that case.  [Ex. 3 (Holder Declaration)]  The Holder Declaration, while
6   referencing certain classified information which formed part of its basis, also provides
7   substantial detail by which the court, the parties, and the public can evaluate the
8   Government's claim of State Secrets in that case.[2]  *Cf. Vaughn v. Rosen*, 484 F.2d 820
9   (D.D.C. 1973) (establishing now-common procedure in FOIA cases of providing detailed
10  index of withheld documents in order to permit scrutiny by requestor and courts); *Nat'l*
11  *Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.D.C. 1986)
12  (describing purpose of *Vaughn* index is "to permit adequate adversary testing of the
13  agency's claimed right to an exemption").

14   Among other details, the Holder Declaration sets forth details pertinent to the case
15  in which it was submitted, details about the process undertaken by the specific executive
16  branch agencies claiming the privilege, the specific individuals involved in the review
17  process, and details about the DOJ's own internal procedures for defending an invocation
18  of the privilege.  [*See* Ex. 3 (Holder Declaration) ¶¶ 6-16]  Put simply, the Holder
19  Declaration represents a serious, good-faith attempt by the Government in that case to
20  balance national security concerns with other equally-if-not-more-weighty concerns,
21  including the right of the parties to evaluate and test the Government's privilege claim and
22  the right of the public to access court proceedings.

23   In the present case, the Government will not tell Defendants and the public
24  *anything*.  It will not say which executive department originated the claim of the State
25  Secrets privilege.  It will not say which person signed the declaration it submitted.  It will

---

[2] Previously in the present case, the Government has claimed that it was proceeding not pursuant to the State Secrets privilege, but pursuant to some other privilege it called the "classified information privilege" or "national security privilege." [Doc. 166 at 2]  The Holder Declaration explicitly notes that it has invoked the State Secrets privilege; it makes no mention of any other privileges.

1 not say whether the declaration complies with *Reynolds*. And its last missive makes plain
2 that it will not say anything more about this important topic.

### C.     Conclusion

Defendants need not, and do not, trust the Government to follow the rules or to protect their interests, especially in this case. Rather, Defendants are entitled to ensure "that the prosecution's case encounters the crucible of meaningful adversarial testing." *United States v. Hayes*, 231 F.3d 663, 671 (9th Cir. 2000) (internal quotation marks and citation omitted). Throughout this case, the Government has consistently ducked the requirements of a proper State Secrets claim. Only when forced by this Court to do so has it even tried to support that claim properly. Especially under these circumstances, the Government should be required to produce, and the Constitution demands that it produce, sufficient information about the foundation of its State Secrets claim to allow adversarial testing of its adequacy.

Dated: July 20, 2015.                              **PERKINS COIE LLP**

By: /s/ *Jean-Jacques Cabou*
    Jean-Jacques Cabou
    Thomas D. Ryerson
    Alexis E. Danneman
    2901 N. Central Avenue, Suite 2000
    Phoenix, AZ  85012-2788

Attorneys for Defendants Marc Turi and Turi Defense Group

1  **CERTIFICATE OF SERVICE**

2  I hereby certify that on July 20, 2015, I electronically transmitted the attached
3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a
4  Notice of Electronic Filing to the following CM/ECF registrants:

> David A. Pimsner
> Kristen Brook
> U.S. Attorney's Office
> 40 North Central Avenue, Suite 1200
> Phoenix, Arizona 85004
>
> A. William Mackie
> Julie Edelstein
> Department of Justice
> National Security Division
> 600 E Street, NW
> 10th Floor - Bicentennial Bldg.
> Washington, D.C. 20530

/s/  Lisa Mazza