**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-14-00191-001-PHX-DGC |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Marc Turi, et al., | |
| Defendants. | |

This order addresses Defendants' request for documents under Rule 16(a)(1)(E)(i) of the Federal Rules of Criminal Procedure and the government's assertion that the documents are classified and should be withheld from disclosure. The government has filed an *ex parte* motion under § 4 of the Classified Information Procedures Act ("CIPA"). The Court has considered the parties' briefing on these issues (Docs. 166, 167) and arguments at various hearings during the last few months.

**I.     CIPA § 4 and the Procedural Status of this Case.**

The purpose of CIPA is to establish "pretrial procedures that will permit the trial judge to rule on questions of admissibility involving classified information before introduction of the evidence in open court." S. Rep. 96-823, at 1 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4294. The need for these pretrial procedures arose because of the problem of "graymail." *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988). When a defendant needed or possessed classified evidence for his defense, the

government often would forgo prosecution rather than risk publication of the evidence in open court. CIPA sought to remedy this problem by creating procedures that enable a court to rule on the discoverability or admissibility of classified evidence before trial. As relevant here, CIPA allows a court to prevent the discovery of classified information, or to substitute a summary of this information, upon a "sufficient showing" by the government. 18 U.S.C. App. 3 § 4.

The Ninth Circuit has established a three-step procedure for ruling on CIPA § 4 motions:

> When considering a motion to withhold classified information from discovery, a district court must first determine whether . . . the information at issue is discoverable at all. If the material at issue is discoverable, the court must next determine whether the government has made a formal claim of the state secrets privilege, lodged by the head of the department which has actual control over the matter, after actual personal consideration by that officer. Once a court concludes that the material is discoverable and that the state secrets privilege applies, then the court must determine whether the evidence is relevant and helpful to the defense of an accused. If the information meets the relevant and helpful test, CIPA § 4 empowers the court to determine the terms of discovery, if any.

*United States v. Sedaghaty*, 728 F.3d 885, 904 (9th Cir. 2013) (quotation marks and citations omitted).

In this case, the first step has been satisfied. On October 22, 2014, in response to a motion to compel filed by Defendants, the Court determined that two categories of documents are discoverable under Rule 16(a)(1)(E)(i). Doc. 63. Following that ruling and several other procedural events, the government filed the § 4 motion.

The second step has also been satisfied. Following filing of the § 4 motion, the Court asked the parties to brief the kind of submission the government must make in support of a CIPA § 4 claim. Following briefing, the Court entered an order holding that the government can seek protection under CIPA § 4 only by "making a formal claim of privilege, lodged by the head of the department which has actual control over the discoverable information, after personal consideration by that officer." Doc. 170 at 3. The Court gave the government 21 days to submit such a formal claim of privilege. The

government later submitted a sealed, *ex parte* document that complies with this requirement.

The Court must now complete the third step – determine whether documents submitted by the government *in camera* should be withheld from Defendants. To assist in making this decision, the Court asked the parties to brief the legal standard to be applied in deciding whether discoverable documents covered by the state secrets privilege should be disclosed. The parties complied (Docs. 166, 167), and the Court will now set forth the legal test it will apply in making this decision. In a sealed, *ex parte* order, the Court will explain its basis for concluding whether specific documents reviewed *in camera* satisfy the legal test.[1]

**II. Analysis.**

Although § 4 of CIPA creates a procedure for deciding the discoverability of classified evidence, it does not dictate when the government must disclose such evidence. "CIPA does not expand or restrict established principles of discovery and does not have a substantive impact on the admissibility of probative evidence." *Sedaghaty*, 728 F.3d at 903; *see also* H.R. Conf. Rep. 96-1436, 12 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4307, 4310 ("[N]othing in [CIPA] is intended to change the existing standards for determining relevance and admissibility.").

Because CIPA does not set a standard for deciding whether classified information should be discoverable, appellate courts have uniformly turned to the standard articulated in *Roviaro v. United States*, 353 U.S. 53 (1957).[2] *Roviaro* addressed when information

---

[1] Because the separate order addresses classified documents reviewed *in camera*, the order will not be filed in the Court's public docket. Pursuant to CIPA, the order will be filed under seal with the Court's Classified Information Security Officer.

[2] *See, e.g.*, *United States v. Pringle*, 751 F.2d 419, 428 (1st Cir. 1984); *United States v. Smith*, 780 F.2d 1102, 1108 (4th Cir. 1985) (en banc); *United States v. Yunis*, 867 F.2d 617, 622 (D.C. Cir. 1989); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998); *United States v. Aref*, 533 F.3d 72, 79 (2d Cir. 2008); *United States v. Hanna*, 661 F.3d 271, 295 (6th Cir. 2011); *United States v. El-Mezain*, 664 F.3d 467, 523 (5th Cir. 2011). Some judges have argued that the *Roviaro* standard should not be used in the CIPA context. *See Smith*, 780 F.2d at 1111-12 (Butzner, J., dissenting).

subject to an "informer's privilege" must be disclosed to a defendant in a criminal case.[3] The Court in *Roviaro* explained when the informer's privilege must give way to a defendant's need for information:

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness.  Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.  In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

*Id.* at 60-61.  After stating that "the privilege must give way" when information is relevant and helpful to the defense, the Supreme Court added some qualifying language:

> We believe that no fixed rule with respect to disclosure is justifiable. *The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.* Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.* at 62 (emphasis added).

*Roviaro* thus creates an ambiguity.  Does the privilege give way simply upon a determination that the information is relevant and helpful to the defense as suggested in the first quotation from *Roviaro* above?  Or, when the information would be relevant and helpful, must a court proceed to balance the public interest against the defendant's need for the information as suggested in the second quotation?  Some courts in the CIPA context have concluded that the "balancing" referred to in *Roviaro* involves nothing more than "determin[ing] that the information the Government seeks to withhold is material to the defense."  *United States v. Moussaoui*, 382 F.3d 453, 476 (4th Cir. 2004).  But this approach involves no balancing at all – if the information is material, it must be disclosed

---

[3] The informer's privilege is defined as "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Id.* at 59. "The state secrets privilege is a common law evidentiary privilege that permits the government to bar the disclosure of information if 'there is a reasonable danger' that disclosure will 'expose military matters which, in the interest of national security, should not be divulged.'" *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1196 (9th Cir. 2007) (quoting *United States v. Reynolds*, 345 U.S. 1, 10 (1953)).

- 4 -

regardless of the government's countervailing interests.

Ninth Circuit cases suggest that actual balancing must occur. In *Sarkissian*, the Ninth Circuit made this clear statement: "Defendants argue that CIPA forbids balancing national security concerns against defendant's need for documents. Their argument is meritless. . . . On issues of discovery, the court can engage in balancing." 841 F.2d at 965. In a later CIPA case, the Ninth Circuit cited this holding from *Sarkissian* and its specific reference to balancing. *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998). Other circuits also hold that balancing is appropriate in CIPA cases. *See United States v. El-Mezain*, 664 F.3d 467, 523 (5th Cir. 2011); *United States v. Smith*, 780 F.2d 1102, 1106 (4th Cir. 1985) (en banc). Although the Ninth Circuit's decision in *Sedaghaty* did not mention balancing, neither did it suggest that classified information must always be disclosed when it is relevant and helpful to the defense. The court stated: "If the information meets the relevant and helpful test, CIPA § 4 empowers the court to determine the terms of discovery, if any." *Sedaghaty*, 728 F.3d at 904. The words "if any" suggest that classified information may in some circumstances be withheld even when it would be relevant and helpful to the defense.

The question, then, is how the Court should decide when relevant and helpful classified information must be disclosed? What factors are considered and how is the government's interest in national security to be weighed against a defendant's right to a fair trial? Both interests are compelling. A defendant's interest in a fair trial is paramount, and "[t]he Government has a compelling interest in protecting . . . the secrecy of information important to our national security[.]" *Snepp v. United States*, 444 U.S. 507, 510 n.3 (1980). Unfortunately, the Supreme Court's statement in *Roviaro* provides little help in how to balance these interests: "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. at 62. Cases applying *Roviaro* in CIPA cases also fail to provide guidance.

1    A few conclusions seem self-evident.  Any balancing must fully protect the defendant's interest in a fair trial.  The balancing must also afford due regard to the government's interest in maintaining national security.  When the two interests come squarely into conflict, the defendant's right to a fair trial should prevail because the government can always choose to preserve national security by dropping the prosecution, but the bedrock principle of due process dictates that a citizen should never be convicted in an unfair trial.  The Supreme Court has recognized that dropping a prosecution is a choice sometimes required of the sovereign.  *See Jencks v. United States*, 353 U.S. 657, 672 (1957) ("The burden is the Government's . . . to decide whether the public prejudice of allowing the crime to go unpunished is greater than that attendant upon the possible disclosure of state secrets and other confidential information in the Government's possession.").

To identify the point in the balancing process where the state secrets privilege must give way, the Court finds guidance in *Klimavicius-Viloria*, a Ninth Circuit case describing the showing required for disclosure under CIPA.  The case explains that "information meets the standard for disclosure 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  *Klimavicius-Viloria*, 144 F.3d at 1261 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  This standard is adopted from the Supreme Court's decision in *Bagley*, which addresses *Brady* violations and ensures that a defendant will not be denied a fair trial because a prosecutor fails to disclose exculpatory evidence.  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Applied in the CIPA context, this standard similarly would ensure that a defendant will not be denied a fair trial for national security reasons, while requiring disclosure of classified information only when truly necessary – when the classified information would affect the result of the proceeding.

Ordinarily, the government has a duty under *Brady* to disclose evidence that "is favorable to the defense, *i.e.*, . . . evidence that helps bolster the defense case or impeach the prosecutor's witnesses."  *United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir.

2009) (quotation marks and citations omitted). But the Supreme Court has recognized that a defendant's constitutional right to a fair trial "is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995). Thus, nondisclosure of favorable evidence violates a defendant's constitutional rights only if "the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 280-82 (1999); *see also United States v. Agurs*, 427 U.S. 97, 107-08 (1976). This standard sets an outer limit as to what *Brady* information may be withheld from a defendant without violating his right to a fair trial. When important national security concerns are in play, the Court can be guided by this outer limit when deciding what classified information the government must be compelled to reveal.

Guided by these cases and the self-evident points described above, the Court reaches the following conclusions. The three-step process identified in *Sedaghaty* must be followed. The Court must determine whether the requested information is discoverable, whether the government has asserted a valid state secrets claim, and whether the information would be relevant and helpful to the defense. 728 F.3d at 904. If all three steps are satisfied, the Court must then engage in the balancing authorized by *Roviaro*, 353 U.S. at 62, *Sarkissian*, 841 F.2d at 965, and *Klimavicius-Viloria*, 144 F.3d at 1261. In performing this balancing, the Court must weigh the defendant's interest in obtaining the information against the government's interest in maintaining its secrecy, considering the importance of the classified information and the national security problems that would result from its disclosure, along with "the crime charged, the possible defenses, the possible significance of the [classified information], and other relevant factors." *Roviaro*, 353 U.S. at 62. The Court should also consider whether the government could substitute for the classified information a statement that would "admit[] relevant facts that the classified information would tend to prove." 18 U.S.C. App. 3 § 4. As noted, however, there is an outer limit. No matter how sensitive the

national security information may be, the information or an adequate substitute must be disclosed if there is a reasonable probability that it would alter the outcome of the case. *Strickler*, 527 U.S. at 280-82; *Klimavicius-Viloria*, 144 F.3d at 1261.

This approach to balancing is supported by *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987). *Ritchie* involved a Pennsylvania law that created a privilege for an agency's investigations into child abuse. The government had charged the defendant with sexually abusing his daughter, and the defendant requested the records of the agency's investigation. Despite not examining the agency's records, the trial judge ruled that the defendant was not entitled to them. The Supreme Court found that the correct approach was for the trial judge to review the records *in camera*. The defendant could then receive the records only if the judge determined that the records would probably change the outcome of the defendant' case. *Id.* at 58. While the privilege for child-abuse records and the privilege for state secrets are not the same, they both involve compelling government interests. *Ritchie* supports the Court's conclusion that the tipping point for disclosure – the point at which the government's compelling interests do not outweigh the defendant's interests – is when there is a reasonable probability that the information would change the outcome of the case. In making such a ruling, a judge does not have the ability to predict with certainty the nature and outcome of the trial. The judge therefore should err on the side of protecting the defendant.[4]

**III.   Conclusion.**

In 1807, Chief Justice John Marshall struggled with whether a criminal defendant had a right to classified information that might involve national-security concerns. *United States v. Burr*, 25 F. Cas. 187 (C.C.D. Va. 1807). Vice President Aaron Burr had been charged with treason and requested access to a letter that a general had written to President Jefferson. The prosecutor agreed to turn over the letter, but reserved the right

---

[4] Apart from the Ninth Circuit's cursory statement in *Klimavicius-Viloria*, the Court is not aware of another court that has adopted this standard in the CIPA context. The D.C. Circuit considered a similar approach, but declined to rule on it. *United States v. Mejia*, 448 F.3d 436, 456 n.18 (D.C. Cir. 2006).

- 8 -

to withhold any confidential information it might contain. In considering the prosecutor's right to do this, Chief Justice Marshall noted: "it is a very serious thing, if such letter should contain any information material to the defence, to withhold from the accused the power of making use of it. It is a very serious thing to proceed to trial under such circumstances. I cannot precisely lay down any general rule for such a case." *Id.* at 192. Chief Justice Marshall, like the Supreme Court in *Roviaro*, was unable to establish any general rule.[5] But he did suggest that the government could withhold the letter unless "such letter could be shown to be absolutely necessary in the defence" or "essential to the justice of the case." *Id.*

The Court believes that Chief Justice Marshall got it right. When compelling national-security concerns arise, a defendant may obtain pretrial-discovery of classified information if there is a reasonable probability that the information might change the outcome of the case.

The Court will use this approach in ruling of the government's *ex parte* CIPA § 4 motion. As noted, that ruling will be entered separately in a sealed, *ex parte* order.

Dated this 2nd day of October, 2015.

David G. Campbell
United States District Judge

---

[5] "What *Roviaro* thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity." *McCray v. State of Ill.*, 386 U.S. 300, 311 (1967).

- 9 -