CR-14-00191-PHX-DGC(DKD), October 17, 2014

1          **UNITED STATES DISTRICT COURT**

2          **FOR THE DISTRICT OF ARIZONA**

3                  _____

4

United States of America,        )

5                                 )

                        Plaintiff, )

6   vs.                           )

                                  )  CR-14-00191-PHX-DGC(DKD)

7   **Marc Turi, et al.,**          )

                                  )

8                       Defendants. )

                                  )  October 17, 2014

9   _____ )  1:29 p.m.

10

11          **BEFORE:  THE HONORABLE DAVID G. CAMPBELL, JUDGE**

12          <u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

13                  MOTION HEARING

14

15

16

17

18

19

20

21  Official Court Reporter:
    **Elaine Cropper, RDR, CRR, CCP**
22  Sandra Day O'Connor U.S. Courthouse, Suite 312
    401 West Washington Street, SPC 35
23  Phoenix, Arizona  85003-2151
    (602) 322-7245/(fax) 602.322.7253
24
    Proceedings Reported by Stenographic Court Reporter
25  Transcript Prepared by Computer-Aided Transcription

                  United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1                    **A P P E A R A N C E S**

2

For the Government:
3                    DAVID A. PIMSNER, ESQ.
                     U.S. Attorney's Office
4                    40 North Central Avenue, Suite 1200
                     Phoenix, AZ  85004-4408
5                    602.514.7500

6    For the Government:
                     WILLIAM MACKIE, ESQ.
7                    U.S. Department of Justice
                     National Security Division
8                    600 E. St. NW
                     Washington, D.C.  20530
9                    202.233.2122/(fax) 202.233.2146

10   For the Defendants:
                     ALEXANDER W. SAMUELS, ESQ.
11                   JEAN-JACQUES CABOU, ESQ.
                     Perkins Coie, L.L.P.
12                   2901 North Central Avenue
                     20th Floor
13                   Phoenix, AZ  85012

14

15

16

17

18

19

20

21

22

23

24

25

                     United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1                      **P R O C E E D I N G S**

2          (Court was called to order by the courtroom deputy.)

3          (Proceedings begin at 1:29.)

4          (Defendant present.)

5               THE COURT:  Thank you.  Please be seated.          01:29:36

6               COURTROOM DEPUTY:  Criminal case 2014-191, *United*

7     *States of America v. Marc Turi* and others, on for motion

8     hearing.

9               MR. PIMSNER:  Good afternoon, Your Honor.  David

10    Pimsner and Will Mackie from the Department of Justice      01:29:48

11    appearing on behalf of the United States.

12              THE COURT:  Good afternoon.

13              MR. CABOU:  Good afternoon, Your Honor.  Jay Cabou

14    and Alex Samuels along with our client, Marc Turi, on behalf of

15    the defense.                                                 01:29:58

16              THE COURT:  Good afternoon.

17              Welcome back, Mr. Samuels.

18              MR. SAMUELS:  Thank you.  Good to be here.

19              THE COURT:  All right.  Let me cover a couple of

20    details.  I have the best of intentions of getting you a ruling   01:30:09

21    on the motion to dismiss and motion to strike by now.  I

22    reviewed it.  I've got a written order on my desk.  I've edited

23    it.  I was going to file it this morning but decided I needed

24    to take one more careful pass through it.  So it will probably

25    be issued early next week.                                    01:30:30

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1      A couple questions about today.  When we were here        01:30:36

2  last, as reflected in the minute entry, I had directed you all

3  to file a discovery plan for the case, including a discussion

4  of whether it should be complex, and I haven't seen one filed.

5  We also set a time by which the Government was going to move to    01:30:48

6  unseal so that we could argue that today.  I haven't seen that

7  filed.  Could you tell me what's happened on those two issues?

8      MR. PIMSNER:  Your Honor, part of the problem is the

9  transition between Ms. Brooks and I.  I was out of the office

10  for family health issues and then she left before I got back    01:31:03

11  for her pregnancy, and I wasn't aware of the complex -- I guess

12  I didn't read the minute entry close enough.  It was reflected

13  in the minute entry.

14      I did speak to Ms. Brooks, though, prior to her

15  actually giving birth, and it was her impression that the Court    01:31:28

16  was going to wait on the discovery motion on the sealing issue

17  so we've not filed anything but we can.  I mean, if the Court

18  wants a separate written motion.  We stand by our position that

19  there's no legitimate basis to keep this sealed, but we thought

20  the Court wanted to address the discovery issue first.          01:31:50

21      THE COURT:  Well, that is fine but I think you should

22  file a motion if you want it unsealed.  I don't think I should

23  just do it on the basis of your oral motion.

24      MR. PIMSNER:  Yes, Your Honor.

25      THE COURT:  And I did ask the parties before the          01:32:06

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1  hearing to meet and confer about a joint proposed case      01:32:08

2  management order.  I take it that just didn't happen.

3         MR. CABOU:  Your Honor, that's as much my fault as

4  certainly anyone's.  I think we just, frankly, got a little bit

5  bogged down in the briefing and haven't really turned to the   01:32:17

6  case management order.  In part not because we're not in touch,

7  which we are in regular touch but, frankly, until we have a

8  sense of what collateral litigation, if any, might ensue over

9  the classified information procedures process, it's a little

10  bit difficult for us to estimate a schedule on which the matter   01:32:34

11  might proceed.

12         I know that one of the things I've already discussed

13  with Mr. Mackie and Mr. Pimsner on the subject of scheduling is

14  the Government's intention to seriously consider, if not

15  definitely take, an interlocutory appeal of any classified   01:32:49

16  information order.  We have similar designs on any order that

17  would preclude us from having certain things we want so,

18  frankly, we're a little bit stuck.  To the extent that Your

19  Honor wants that, we will get it done and we apologize for not

20  doing anything sooner.                                         01:33:06

21         MR. PIMSNER:  And if the Court wants it sooner than

22  before the ruling, we can meet next week.  I'm sure Mr. Cabou

23  is available.

24         MR. CABOU:  Anytime.

25         MR. PIMSNER:  As far as if we are ruled against as   01:33:19

CR-14-00191-PHX-DGC(DKD), October 17, 2014

 1   far as the CIPA issues, Mr. Mackie or ourselves, we don't get          01:33:23

 2   to make the decision on interlocutory appeal.  It's going to be

 3   reviewed at the higher levels at the Department of Justice.  So

 4   I can't represent to the Court today if the Court finds

 5   adversely to our position, then we're absolutely filing an            01:33:40

 6   appeal.

 7             THE COURT:  Okay.

 8             Well, let's talk about that issue for a minute.  You

 9   can sit down.

10             To my right is Scooter Slade.  He is going to be the        01:33:53

11   classified information security officer to the Court under

12   CIPA, and I am designating him as the officer.  He's with the

13   Department of Justice so he will be designated for purposes of

14   any CIPA procedures that we have in the case.

15             It seems to me, consistent with what we talked about        01:34:14

16   last time, if I were to decide on the basis of the motion to

17   compel that some categories of information set by the defendant

18   should be produced by the Government.  That's only the first of

19   two steps that need to occur.

20             The second thing would need to be a CIPA procedure          01:34:30

21   because my understanding of CIPA -- I'm no expert but my

22   understanding is that I need to make a determination like I

23   make for sensitive law enforcement information under *Roviaro*.

24   I first need to look at the information and confirm that what

25   I've ordered to be produced is classified in some way and,            01:34:49

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1    secondly, I then need to decide whether it would be relevant          01:34:55

2    and helpful to the defense, which is I think a higher standard

3    than the Rule 16 standard for production of material

4    information.

5              And that would happen, as I understand it under CIPA,       01:35:12

6    in an ex parte hearing where I look at the evidence and decide

7    if it would be relevant and helpful to the defense.

8              My thought would be if that were going to occur that

9    what I would want to give the defense an opportunity to do

10   before any such ex parte hearing is share with me a memo if          01:35:27

11   they want to ex parte about what the key issues are in their

12   defense and what I should have in mind when I'm looking at

13   evidence and deciding whether it meets the standard for

14   disclosure under CIPA.

15             But that's a separate proceeding that I think has to        01:35:45

16   follow any determination I make that information is

17   discoverable under Rule 16.

18             Do you all agree with that?

19             MR. MACKIE:  Yes, Your Honor, and should there be a

20   point where the defendant then files something that says, "I         01:36:02

21   should have these materials," then we could proceed to a

22   Section 6 hearing where in a sense it would be one where there

23   would be a, basically, presentation besides the written

24   material that the Court could consider.

25             THE COURT:  With both parties participating?               01:36:20

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1    MR. MACKIE:  Yes, m'hum.                                        01:36:22

2        THE COURT:  I had thought as well, though, that if

3    I'm going to be looking at or hearing explanations of this

4    material so that I can decide whether or not it's entitled to

5    protection and whether or not it meets the disclosure          01:36:35

6    standards, that kind of a hearing happens ex parte.  Is that

7    not your understanding, Mr. Mackie?

8        MR. MACKIE:  Yes, Your Honor.  I'm sorry.  Repeat

9    that again, I'm sorry.

10       THE COURT:  Is that your understanding?                     01:36:46

11       MR. MACKIE:  That if as far as the defendant has the

12   opportunity to file something with the Court, if they wish to,

13   ex parte?

14       THE COURT:  But it sounded like you said under a

15   Section 6 hearing they would be in the courtroom arguing.       01:37:03

16       MR. MACKIE:  They would.

17       THE COURT:  What about the procedures where I'm

18   looking at the evidence and hearing explanations from the

19   Government as to why it's sensitive?  Are they in the courtroom

20   for that?                                                       01:37:14

21       MR. MACKIE:  It would be like this.

22       I'm talking about the Section 4 hearing is where,

23   similar to what -- I'm sorry, I didn't hear that.  Section 4

24   hearing is where such as it was, if you had questions relating

25   to the Government's motion.                                     01:37:34

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1   THE COURT:  Well, let me tell you what I'm thinking    01:37:38
2   and maybe I'm just getting this wrong.  If I say, for example,
3   that I think some of the information called for in request
4   number one is relevant and I order the Government -- or I say
5   it's discoverable under Rule 16, it seems to me the Government    01:37:52
6   could come back and say that has national security
7   implications.  We want to explain to you why, specifically, it
8   does.  And that procedure, for me to consider that issue under
9   CIPA, would not be a public hearing.  That would be a Section 4
10  proceeding.    01:38:16

11      And my understanding is that the test I would apply
12  would be the *Roviaro* test, which is whether the information is
13  relevant and helpful to the defense and if so, then I could
14  order it produced and if not, then I could order it not to be
15  produced.    01:38:31

16      But it seems to me that kind of a proceeding may
17  follow if I decide that some categories of the requests of
18  discovery are appropriate under Rule 16.

19      MR. MACKIE:  That is correct, Your Honor.

20      THE COURT:  Mr. Cabou, you wanted to say something it    01:38:43
21  looked like?

22      MR. CABOU:  Yeah.  Your Honor, I wanted to highlight
23  the distinction that I think Mr. Pimsner and Mr. Mackie just
24  made between what -- and I confess to also not being an expert
25  in CIPA.  This is -- I'm kind of learning along with everyone    01:38:55

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1    in this case but Section 4 deals with the discovery and Section    01:38:59

2    6 deals with presentation at a hearing or a trial.  And at this

3    point, we're only focused on Section 4 through discovery.  And

4    my understanding is that if it's relevant under Rule 16, that

5    the order would be to produce it at which point the Government    01:39:16

6    could make a motion under Section 4, which could be ex parte

7    but need not be ex parte, to either authorize and propose that

8    it not be disclosed for certain reasons or that an unclassified

9    substitute, whether it's a summary or some other thing, be

10   used.                                                            01:39:36

11        I'm not confident that we get to weigh in on that but

12   I think that's my understanding of how it goes.

13        MR. MACKIE:  Correct.  The Section 4 is a discovery

14   issue where the Government makes a filing.  If the Court rules

15   in any manner that the Government believes implicates           01:39:51

16   classified information would seek to, in an ex parte hearing,

17   describe to the Court what the harms are and the Court would

18   ultimately make a ruling on that.

19        THE COURT:  And the three steps I think you were

20   referring to, Mr. Cabou, are I could allow the Government to     01:40:13

21   delete sensitive information such as from a document; I could

22   permit them to summarize it in a way that doesn't raise the

23   national security concerns; or they could make an admission of

24   a fact that doesn't disclose things they are sensitive about.

25   That's all Section 4 possibilities.  Is that what you were      01:40:34

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

 1    alluding to?                                                      01:40:39

 2            MR. CABOU:  Yes, Your Honor, that's precisely what I

 3    was alluding to.  And in terms of the standard, I confess I am

 4    not prepared to give the Court today our position on what

 5    standard would apply to Your Honor's decision.  We would be      01:40:49

 6    more than happy to brief that issue and to the extent Your

 7    Honor is considering withholding any information that would

 8    otherwise be subject to production, we would respectfully ask

 9    for a chance to brief that.

10            THE COURT:  All right.  What I'm looking at.  I'm         01:41:05

11    looking at an FJC publication to help judges.  There's a Ninth

12    Circuit case, *United States v. Klimavicius*

13    K-L-I-M-A-V-I-C-I-U-S, *Klimavicius-Viloria*, V-I-L-O-R-I-A.  It

14    is at 144 F.3d 1249.  And at page 1261 it's quoted in this book

15    as saying:  In order to determine whether the Government must    01:41:33

16    disclose classified information, the Court must determine

17    whether the information is, quote, relevant and helpful to the

18    defense of an accused, close quote.

19            And that relevant and helpful language comes out of

20    *Roviaro*.  That's something we deal with in other confidential  01:41:50

21    information cases.  If we get there and you want to brief

22    something, you'll certainly be entitled to do that.  But I

23    guess my point was that there may well need to be a second step

24    if I agree that some of the information that the defense seeks

25    is discoverable under Rule 16.                                   01:42:13

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1     One other case that is referred to a lot in this          01:42:16

2  booklet that I haven't had time to read yet, but it looks like

3  it's going to be helpful to us all, is a DC circuit state.

4  *United States v. Megia*, M-E-G-I-A, 448 F.3d 436.

5     And, among other things, this book says *Megia* allows   01:42:35

6  if I'm going to hold a Section 4 ex parte hearing, then I can

7  allow -- I'll just read you what the book says:  The Court also

8  allowed defense counsel to submit ex parte to the Court their

9  defense needs so that the Court could better evaluate whether

10 the Government's classified submissions were discoverable.  But  01:42:57

11 we can all look at those cases a little more closely if we get

12 there.

13     All right.  Well, the first step, then, we need to do

14 is assess this motion to compel.  I've read the briefing on the

15 motion.  I've not had time to read the cases.  I've looked      01:43:18

16 briefly at the *Doe* case, which you all have cited, and the

17 *Mason* case.

18     I do think it's going to be relevant as to what proof

19 the Ninth Circuit permits for a public authority defense and

20 whether the defense is limited to proof that the defendant was  01:43:39

21 instructed to take the actions or whether it includes a

22 reasonable belief that he was instructed.

23     The defense cites the *Mason* case to support the

24 reasonable belief idea.  The *Doe* case says *Mason* was overruled

25 by *Dixon* but only with respect to -- I think it says only with  01:44:01

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1   respect to offense where the burden of proof is knowingly   01:44:04

2   rather than some other specific intent.  And I haven't had time

3   to read *Dixon* or dig into those issues.

4        But I take it you all are in disagreement.

5   Government is of the view -- well, I think you say that it   01:44:18

6   hasn't been decided in the Ninth Circuit but you cite half a

7   dozen other circuits that have said that you have to prove, the

8   defendant has to prove that they were instructed to take the

9   action, not just that they reasonably believe so.

10       Is that the Government's position?   01:44:33

11      MR. MACKIE:  Yes, Your Honor.  On both Doe and

12   actually what in *Mason* what the Court said was the proper

13   instruction was, basically, if the person engaged in conduct

14   that violates the law, was it in reliance on the statement or

15   act of a Government official and that the defendant then acts   01:44:54

16   with a reasonable belief that they were acting as an authorized

17   agent?

18       And the quote of *Mason* said the mistaken belief was

19   what they said prior cases that indicated in *Mason* itself, the

20   Court said basically the jury instruction should have read that   01:45:15

21   if a person engages in the conduct that violates a criminal

22   statute at the request of a Government law official with a

23   reasonable belief that he or she is acting as the authorized

24   Government agent presupposes that it is acting at the direction

25   of the law enforcement agent.   01:45:37

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1     THE COURT:  Mr. Cabou, do you read it differently?          01:45:41

2     MR. CABOU:  We do, Your Honor.  We feel strongly that

3  the idea of an apparent public authority defense is more than

4  viable.  And while we apologize for not including this in the

5  briefing, there is a subsequent 2005 published Ninth Circuit   01:45:54

6  opinion which is *U.S. v. Burt*, B-U-R-T, 410 F.3d 1100, which

7  reversed a conviction from this district, out of Tucson, in

8  which the District Court refused to instruct on apparent public

9  authority and that was the basis upon which that conviction was

10 reversed.                                                       01:46:18

11     I would also note that the Ninth Circuit current jury

12 instruction 6.11 talks about a reasonable belief that they were

13 acting at the behest of a Government agent.  It's not limited

14 to actual authority.

15     And I have a copy for everybody if you would like to       01:46:37

16 see it.

17     THE COURT:  Yes.  I would.  Do you have the

18 instruction?

19     MR. CABOU:  Yes.  I've got four copies so if it's

20 okay with the Court, I'll leave two with the Government and      01:46:44

21 bring one up to you.

22     THE COURT:  That's fine.

23     MR. CABOU:  What is also clear --

24     THE COURT:  Hold on just a minute.  Let me read it,

25 please.                                                         01:47:05

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1       A couple comments on this instruction.  It appears it   01:48:48

2  was written before *Doe* because it said there's no Ninth Circuit

3  case that has addressed *Dixon* and that that's what *Doe*

4  addresses but *Doe* said that *Dixon* is controlling.  And to the

5  extent it's inconsistent with *Mason*, *Mason* is overruled.  It   01:49:06

6  seems to me that in light of that, that if I were to give this

7  instruction today, what I would need to give is the first

8  paragraph at the top and the block paragraph in the comment.

9       Do you agree with that, Mr. Cabou?

10      MR. CABOU:  Yes.  So -- I think I do and if you'll   01:49:29

11  permit me to kind of restate what I think the proposition is,

12  is that the correct instruction, given the present state of the

13  law, would be -- the first paragraph would be that the

14  defendant contends, then to skip the second paragraph and then

15  to move to the block quote in the middle that then says:  The   01:49:47

16  defendant must prove this defense by a preponderance of the

17  evidence, and continue with that paragraph.

18      Is that correct, Your Honor?

19      THE COURT:  Yeah.  That's my understanding.  But if I

20  did that, then what I would be telling the jury in the first   01:50:02

21  paragraph is that the defendants in this case contend that they

22  committed the acts charged in the indictment at the request of

23  a Government agent and, secondly, what they would have to prove

24  is that they had a reasonable belief.  They were acting as an

25  authorized agent of the Government.   01:50:25

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1    Do you agree with that?

2    MR. CABOU:  I believe that I do, Your Honor, and

3 although it's true that this -- I would reserve the right to,

4 if we get to a jury --

5    THE COURT:  We're not making final jury instructions

6 today.

7    MR. CABOU:  Understood.  I believe that I do and I

8 believe that the comment basically describes the fact that

9 there is some ongoing debate and perhaps the argument is after

10 *Doe*, the debate is settled as to who bears the burden but not

11 as to the viability of the reasonable belief standard which is

12 tightly linked to the apparent authority discussion.

13    THE COURT:  Well, but the defendant has to be

14 contending under the first paragraph that it did so at the

15 request of a Government agent; right?

16    MR. CABOU:  Yes.

17    THE COURT:  And that they had reason to believe that

18 they were authorized.  So, for example, if I came in and said,

19 "Look, I knew that the United States Government was covertly

20 supporting the Libyan rebels and so I went over there and got

21 them some weapons because I love America," that is clearly not

22 a public authority defense; right?

23    MR. CABOU:  Agreed, Your Honor.  We do not -- we

24 certainly would not presume to argue that just because the

25 defendant had a reasonable belief that it was in the interests

United States District Court

01:50:26

01:50:36

01:50:48

01:51:05

01:51:17

01:51:36

CR-14-00191-PHX-DGC(DKD), October 17, 2014

```
1    of the U.S. foreign policy as you saw on TV, that is enough to      01:51:38
2    give him a reasonable belief.  That is not what we would be
3    arguing.  There would have to be circumstances and facts
4    adduced that shows that he had this interaction with Government
5    agents or people he reasonably believed were imbued with          01:51:53
6    Government authority.
7            THE COURT:  What if the -- and I'm just trying to
8    make sure I understand your position.  What if the defense is,
9    "Look, I never talked to anybody.  I met some CIA operatives
10   but I didn't really talk to them but I think they knew what I     01:52:11
11   was doing and I think that they approved it.  Therefore, I
12   reasonably believed I was acting with authority."  So what's
13   missing is the assertion that I did so at the request of a
14   Government agent.  Would that be a sufficient defense?
15           MR. CABOU:  Yes.  We believe if it was reasonable to      01:52:30
16   believe that that person had authority, whether or not that
17   person is legally empowered to give that direction as of --
18           THE COURT:  I'm saying there was no direction.
19   Nobody told me to do it.  Nobody asked me to do it.  Nobody
20   said I could do it, but I believe they knew what I was doing      01:52:46
21   and approved of it.  So I had a reasonable belief, but I can't
22   point to any request that ever came from the Government for me
23   to do it.
24           MR. CABOU:  Well, especially in the areas in which
25   we're discussing, clandestine operations, things that are        01:52:58
```

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1  designed with plausible deniability in mind, we do not believe          01:53:03

2  you need a direct order or a stamped piece of paper that says,

3  "You're hereby authorized to carry out this operation," and

4  that's not how it goes and we don't believe that's necessary.

5          THE COURT:  But will the defendant have to say that          01:53:16

6  the Government asked me to do this, whether it was, you know, a

7  wink and a nod or it was some other communication, they asked

8  me to do this?

9          MR. CABOU:  We do not believe that the defendant has

10  to say on this day at this time, "This person told me these          01:53:26

11  words."  We believe that the Government's request can be

12  inferred through circumstance, whether that's directly with the

13  person involved or otherwise.  Is there some minimum level of

14  plausibility?  Sure.  But if -- especially in the case of

15  someone who, as we have alleged, has previously dealt with          01:53:43

16  three letter agencies of the United States on covert arms

17  transactions, it is certainly reasonable to believe that they

18  were asked to do that even without an explicit request.

19          THE COURT:  Okay.  I understand your position.

20          Mr. Mackie, do you have a different view?          01:54:02

21          MR. MACKIE:  Yes, Your Honor.  I think the difference

22  between inference and direction is significant and I think what

23  he says, essentially, is I can subjectively infer that this is

24  which is entirely different than on page 1148 of *U.S.* *v.* *Doe*

25  705, 1134.          01:54:21

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1        THE COURT:  Let me get there.  I've got the case up      01:54:24
2   here.  You say it's 1148?

3        MR. MACKIE:  1148.  In that instance, the Court is
4   addressing the burden of proof issue but in doing so, the Court
5   states here's what the trial court instructed.                01:54:44

6        THE COURT:  And which head note are you on?

7        MR. MACKIE:  1148 you have basically the version,
8   second column.

9        THE COURT:  Well, we've got head note eight, nine,
10  10, 11.                                                        01:54:55

11       MR. MACKIE:  It would be 11, m'hum.

12       THE COURT:  Okay.

13       MR. MACKIE:  On the second column down there under
14  the paragraph that started with:  Moreover, it is entirely
15  likely that the trial judge error actually helped *Doe* because 01:55:07
16  it, basically, said the Government had the burden of proof.

17       But it goes on to say:  This is what the judge
18  instructed.  And it goes on to say:  Well, we never talked
19  about the burden of proof.  But what we're saying is that in
20  *Doe*, it says this was -- they did not say this was a wrong    01:55:25
21  instruction.

22       Basically, they are saying this was the instruction
23  and they have said, essentially, that they should have said
24  that this is defendant's proof.  But it says if a person
25  engaged in the conduct that violated criminal statute in       01:55:41

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1   reliance on a statement or act of a Government official, factor     01:55:44

2   one.

3           Factor two, with a reasonable belief that the

4   defendant is acting as an authorized Government agent, as in a

5   CI, an undercover agent, to assist in law enforcement, which is    01:55:56

6   consistent with the 6.11 jury instruction, he committed the act

7   charged in the indictment.  He did so at the request of a

8   Government agent.

9           The Government's position is entirely different than

10  inferring and subjectively believing something which is, at        01:56:18

11  best, amorphous.

12          THE COURT:  Well, it seems to me there could be a

13  gray area here.  You know, what this instruction you read says

14  is a person engaged in conduct that violated the criminal

15  statute in reliance on a statement or act of a Government           01:56:40

16  official.  So somebody could say they acted this way and that

17  caused me to believe they were asking me to do it.  That's

18  reliance on an act.

19          MR. MACKIE:  Well, I have to show an affirmative act

20  of doing something.                                                01:56:57

21          THE COURT:  Right.  But if he could describe it.  You

22  may say nobody could draw that conclusion from that act, but it

23  seems to me they can argue that's how I understood the act and

24  it was reasonable.  If they can point to an act, that would

25  satisfy this instruction, wouldn't it?                             01:57:10

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1        MR. MACKIE:  Well, they are going to have to show      01:57:12

2   basically of a Government official doing something, yes.  So as

3   opposed to I am inferring from other conduct myself as an

4   observer that this is what's doing it as far as it --

5        THE COURT:  Okay.  I don't want to try to split hairs   01:57:31

6   too much here because that's not our purpose.  I just wanted to

7   understand the positions of the parties on what needs to be

8   proven.

9        MR. MACKIE:  Yes.  And I also want to echo

10  essentially what defense counsel said that in terms of *Mason*   01:57:42

11  versus *Doe*, that both of the statutes involved here are

12  willfully and knowing statutes so this would fall under *Doe*.

13       THE COURT:  Okay.  Let me ask a couple of specific

14  questions.  Unfortunately, we have an investiture of a judge

15  this afternoon so I can't go beyond about 2:30 here today.  So   01:58:07

16  we will cut right to the heart on the discovery issues.  I have

17  questions for both sides.

18       I want to talk first about defendant's request number

19  one and my question is to the Government, if the Government has

20  in its possession evidence of defendant's prior dealings with   01:58:26

21  the CIA in countries other than Libya, wouldn't that evidence

22  make more likely the defendant's claim that he did arms deals

23  with the CIA?

24       MR. MACKIE:  In simple words, no.  And I'll restate

25  why.  The issue here in terms of the question of whether or not   01:58:51

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1  what he's charged with, he submitted a fraudulent brokering                    01:58:55

2  application with regard to the Libyan Transitional National

3  Congress deal.  That is the issue, not whether they are doing

4  brokering.  Whether or not that fraudulent application is the

5  crime.                                                                          01:59:21

6          If in another country he submitted an application

7  correctly, which is what the Government states, and I think

8  they will admit happened, that is entirely different.

9          If the evidence was in a separate country the

10  defendant had similar conduct in dealing with this.  "Oh, they   01:59:45

11  told me," however we want to phrase it, "that I should submit

12  an application that doesn't state who the real end user is,"

13  then that would be relevant.

14          Our position is, if in a separate country, under a

15  separate deal, he acted according to regulation, that has no     02:00:05

16  bearing, no relevance to the fact that the issue here is in

17  Libya, he acted outside the regulation.

18          THE COURT:  Well, let me challenge you on that for a

19  bit.  Let's assume that defense counsel stands up in front of

20  the jury and says, we're going to prove three things to          02:00:24

21  establish our public authority defense.  First, we're going to

22  prove Mr. Turi was an arms broker for the CIA.  Number two,

23  we're going to prove that the Government was covertly getting

24  arms to the Libyan rebels.  And number three, we're going to

25  prove that the CIA asked him to do it and he reasonably          02:00:46

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1    believed he was doing it.                                    02:00:50

2         If they decide to present their public authority

3    defense in that way, isn't evidence relevant to number one

4    relevant to their defense; namely, Mr. Turi did arms deals with

5    the CIA in other countries?                                 02:01:03

6         MR. MACKIE:  Well, the answer would be that's

7    assuming that the CIA -- that he was dealing with the CIA.

8         THE COURT:  Well, but that's what they are asking for

9    in request one as I read it.

10        MR. MACKIE:  And we have stated before that there's     02:01:18

11   no evidence, there's no direction, there's no communication

12   between the Government agency and Mr. Turi.

13        THE COURT:  Regarding Libya is what I thought you had

14   said.

15        MR. MACKIE:  Regarding the other country.              02:01:35

16        THE COURT:  Okay.  So your position -- I didn't know

17   you were -- you had told the defendants that you have no

18   documents reflecting any communication between the CIA and

19   Mr. Turi.  Is that right?

20        MR. MACKIE:  Correct.  Certainly with -- absolutely    02:01:49

21   with Libya and also absolutely in terms of Afghanistan.

22        THE COURT:  Well, let me ask you this question

23   directly:  If the Government has documents reflecting a

24   relationship between the CIA and Mr. Turi in other countries

25   other than Libya, isn't that relevant to the first prong of the  02:02:10

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1  defense if they decide to present it that way at trial?          02:02:13

2       MR. MACKIE:  I would say no and reason being whether

3  or not the defendant, hypothetically speaking, engaged in a

4  transaction in another country under other circumstances that

5  was in conformance with the law.                                 02:02:32

6       THE COURT:  See, you are jumping to point three of

7  the defense.  I mean, it seems to me if he just stood up and

8  gave testimony to this effect, the jury could go back in the

9  jury room and laugh and say, "Yeah, right, works with the CIA?

10 That's a pipe dream."                                            02:02:52

11      But if there was evidence that he really did work

12 with the CIA, it seems to me that is a move toward his

13 establishment of the defense, regardless of how he did it.  If

14 he was an arms broker for the CIA, that's a significant brick

15 in the wall of their defense that they are trying to build.      02:03:07

16 And I'm having trouble with the notion that it's irrelevant

17 unless he did a deal with them exactly like the one he's

18 alleged to have done for Libya.

19      MR. MACKIE:  Well, yes.  Our position is what's

20 the -- what Your Honor is driving at, what's the relevance.      02:03:21

21 The relevance is whether or not he ever engaged with a

22 Government agency in a different country, in a different time,

23 under different circumstances with the focus of the issue of

24 whether or not he was authorized to submit a fraudulent

25 brokering application.  That is the issue.                       02:03:45

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1    And if he had engaged in similar conduct in another    02:03:48

2    instance, he could say, "See, this is similar to what it is

3    here."

4    And it's like as if one had engaged -- got a loan

5    from a bank a year ago under proper circumstances and then a    02:04:00

6    year later submitted a fraudulent loan application.  The fact

7    that they got a loan from the bank the year before is not

8    relevant to the fraudulent loan application and we say there's

9    really no difference.

10    THE COURT:  Well, I understand the argument but it    02:04:24

11    does seem to me like you're saying he didn't prove it in three

12    steps.  He's got to prove it in one.

13    MR. MACKIE:  We're saying that the relevance issue is

14    whether or not -- let's take for purposes of argument that he

15    engaged in a direct deal with the CIA in a different country at    02:04:40

16    a different time has any bearing on what happened in Libya.

17    I'm just saying because I did something, in this

18    instance appropriately, in another country means it's okay to

19    have appropriately -- inappropriately in Libya.  The mere fact

20    that one engaged in a Government contract or Government    02:05:09

21    relationship in a different country, even under what Your Honor

22    is saying, I worked for them before so that made me think it

23    was okay to do what I did here.  And what we're saying is

24    the -- that's apples and oranges.

25    The conduct was similar -- if the conduct was    02:05:31

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1  similar, then that might be a different argument.                02:05:35

2       THE COURT:  Okay.  I understand the argument.  I'm

3  not sure I agree with it but I understand it.

4       Let me ask a slightly different question of the

5  defense.  The request you made is not for any documents in the   02:05:43

6  possession of the Government that show that Mr. Turi had an

7  arms brokering relationship with the CIA.  You asked for any

8  documents that the CIA has that contain his name so, you know,

9  if they surveyed him when he was student activist on campus or

10 if his name gets into documents because he was an arms broker,   02:06:07

11 nothing to do with him working for them, how is that stuff

12 relevant to this case?

13      MR. CABOU:  Well, Your Honor, to the ex parte that

14 Your Honor is suggesting that documents that don't evidence a

15 relationship of any kind but rather evidence that he might have  02:06:24

16 been surveilled by the CIA are still swept up in this request.

17 We might be inclined to concede that that itself might not be

18 relevant and the request, to that extent, might be inartfully

19 worded.

20      But what we are clearly seeking, this was our proxy,        02:06:39

21 for any document, slip of paper, electronic record, or anything

22 that establishes a relationship, working relationship,

23 clandestine relationship but a relationship between Mr. Turi

24 and the agency.

25      And to our knowledge, Mr. Turi, had there been no           02:06:57

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1   other such documents, we know that a relationship exists and we   02:07:02
2   want proof of that and we want proof of that for the reasons
3   that are already laid out in some of the Government's briefing.
4   Their strategy is clearly, at least in part, to make it look
5   like we've seen too many Tom Clancy movies or too many James     02:07:14
6   Bond movies to suggest that Mr. Turi worked for the CIA and
7   they are making fun of us for that in their pleadings, right.

8           They are saying we are harboring notions based on a
9   Harper's article and that is -- we know that's coming at trial
10  and we're trying to disprove that.  We don't want to rely on a   02:07:32
11  Harper's article.  We don't want to rely on open source
12  material for the exact same reason that Judge Brizan says in
13  *Stever* that Government proof of what we're trying to prove is
14  particularly credible.

15          THE COURT:  I understand your point.                     02:07:45

16          Let me ask a different question of you, Mr. Cabou.
17  Well, first let me ask it of Mr. Mackie.  Going to request
18  number two, I think I know the answer, because I think you just
19  gave it, but it seems to me that request number two, which
20  seeks evidence of the U.S. being involved in covert arms         02:08:00
21  distribution to the Libyan rebels, that would satisfy point
22  number two in the defense I described.  Proof that the U.S. was
23  arming the Libyan rebels which, again, would be supportive of
24  his claim that they asked him to help.

25          Why isn't that -- if we're looking at Rule 401, why      02:08:22

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1   doesn't that make his defense more likely?                          02:08:27

2          MR. MACKIE:  Well -- well, we got 401 and we have

3   certainly 403 but addressing 401.

4          THE COURT:  403 doesn't come into play in discovery.

5   It may come into whether it gets into evidence at trial.            02:08:40

6          MR. MACKIE:  Well, in terms of relevance, right, the

7   relevance issue would be if the Government engaged in some

8   transaction for purposes of argument with a different party

9   under different circumstances, what relevance does that have as

10  to whether or not they did in Mr. Turi's instance?                  02:08:59

11         So the Government had six deals out with other people

12  which, you know, we are certainly not confirming or denying or

13  any of that.  But for purposes of argument, if they had six

14  deals with six other people, what relevance does that have to

15  whether or not, in fact, there was a deal in Libya with          02:09:22

16  Mr. Turi?

17         THE COURT:  Well, it prevents the Government -- if

18  that evidence comes in at trial, it prevents the Government

19  from standing up in front of the jury and saying, "Other than

20  his own say-so, Mr. Turi has not given you a shred of evidence     02:09:34

21  that the U.S. Government ever provided arms to the Libyan

22  rebels covertly."

23         MR. MACKIE:  Yes, Your Honor.  But that has no

24  relevance because it's a question of what happened with

25  Mr. Turi.                                                          02:09:50

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

 1          THE COURT:  Well, but if his claim is, "They asked me    02:09:51

 2   to help arm the Libyan rebels," it seems to me if he could

 3   prove they were arming the Libyan rebels, that helps him make

 4   that point.  It adds some credibility to his argument.

 5          MR. MACKIE:  Would it be any different than saying    02:10:07

 6   that the First National Bank of Arizona gave four loans to

 7   people and my loan, which they are claiming is fraudulent, was

 8   really real because these other four loans were legitimate?

 9          THE COURT:  I don't think that's a fair analogy

10   because what he's claiming here is that something very    02:10:22

11   specifically was being done by the Government and he was part

12   of it.

13          And what these -- if, in fact, there's evidence that

14   the U.S. Government was arming the rebels, that goes a ways to

15   corroborating his claim that he was part of it.  If it wasn't    02:10:37

16   happening, his claim is completely bogus.  But what we're

17   looking at is whether it's -- whether it makes his defense more

18   likely than not under 401.  It seems to me it does make it more

19   likely.

20          MR. MACKIE:  His defense is that I submitted a    02:10:52

21   fraudulent application at the direction of the CIA.

22          THE COURT:  But he's got to lay some foundation for

23   that.

24          MR. MACKIE:  Well, Your Honor, I would say that it's

25   brokering.  What Mr. Cabou, I can understand, is trying to say,    02:11:07

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1    that the issue is just whether or not brokering was okay.          02:11:12
2    That's not the issue.

3         So the issue is the way in which Mr. Turi attempted
4    to do that.

5         THE COURT:  Okay.  I understand your argument.          02:11:27

6         Mr. Cabou, a question on this:  Let's assume that
7    there's a document in the CIA's possession that shows that the
8    ambassador to South Africa went to President Zuma and said,
9    "Would you send some arms to the Libyan rebels?  They really
10   need help."  How would that be relevant to this case?  It would   02:11:45
11   be within your request but what relevancy does that have to
12   this case?

13        MR. CABOU:  Your Honor, I believe that would be
14   within the request because perhaps if there was one document
15   from a totally separate country, from one official that never     02:12:04
16   went anywhere, that might be both within the request --

17        THE COURT:  Let's say there's documents that show
18   that they didn't.  South Africa sent weapons to the rebels.

19        MR. CABOU:  Let me first start by noting that while
20   certainly Your Honor and Mr. Mackie are correct that in a lot     02:12:23
21   of ways what we're asking for is relevant because of what we
22   might want to put in front of the jury and that's a useful
23   device through which to have this discussion.  I also just want
24   to note that this is very early on in our investigation and
25   that the Government has had, you know, four years and dozens of    02:12:37

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1   search warrants to build their case and they have interviewed                 02:12:42

2   people all over the world.  In fact, we're getting discovery

3   yesterday of interviews that took place years ago and we aren't

4   prepared to say what we're going to put in front of the jury.

5   We don't know.                                                                 02:12:56

6           What we're trying to figure out is what evidence we

7   can marshal to tell the best story we can on Mr. Turi's behalf.

8           So to bring the discussion back to Your Honor's

9   question about the document from the ambassador to South

10  Africa, if there is a significant discussion within the United                 02:13:12

11  States Government at high levels, certainly the adminsterial

12  level about arming the rebels, we think that is relevant

13  because it shows that there are high, you know, policy level,

14  foreign policy officials within the Government, the same

15  Government that is now trying to put Mr. Turi in jail, the same                02:13:30

16  Government that asked him to do it in the first place.  But to

17  the extent there is an ongoing high-level discussion by people

18  in the foreign policy operation of the United States about

19  arming the rebels, that is pretty important because it makes

20  Mr. Turi's statements that he had a reasonable belief that this                02:13:46

21  was going on far more likely.  Anything that shows that the

22  United States Government was seriously contemplating arming the

23  Libyan rebels, even discussing it.

24          And, again, that's what Mr. Turi is accused of;

25  right?  There's no weapons that changed hands here.  It's just                 02:14:06

United States District Court

1   brokering.  Was Mr. Turi reasonable in his belief that he was          02:14:10

2   being asked to explore, in other words to have discussions

3   about, to broker these things?

4           THE COURT:  Okay.  I understand your position,

5   Mr. Cabou.                                                             02:14:19

6           MR. CABOU:  Thank you.

7           THE COURT:  But let me ask you another question.

8   Let's assume there's a document that says six months ago the

9   United States Government contacted the Turkey Government and

10  said, "Would you get some weapons to the Syrian rebels."               02:14:39

11  That's within your request.  That would be number four.  What

12  has that got to do with this case?

13          MR. CABOU:  Your Honor, that request would go to, and

14  we believe that document would be relevant to, the broad

15  category of things about how these deals are done.  Right now          02:14:53

16  all we can do is put on perhaps Mr. Turi's testimony, perhaps

17  the testimony of some experts who could talk about how this is

18  done, how the business of covert arms transactions gets done.

19  And to the extent that we can then establish that Mr. Turi's

20  actions are within the model for how this gets done, that              02:15:12

21  certainly makes his dissents far more viable.

22          THE COURT:  But going to the Government of Turkey and

23  asking them to send some arms across the border is quite

24  different than how it was done here, isn't it?

25          MR. CABOU:  Well, Your Honor, the details of the               02:15:31

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1   hypothetical deal being discussed in the hypothetical document          02:15:32
2   here talking about might, in fact, be relevant.  There's no one
3   deal that's going to be the same.

4           THE COURT:  Might, in fact, be relevant isn't a
5   standard.  I'm a little concerned about your argument that they          02:15:42
6   have had months to do this.  Now we get our shot.  That sounds
7   like civil discovery.  That's not the standard for criminal
8   discovery under Rule 16.

9           MR. CABOU:  Agreed, Your Honor.  And we're certainly
10  not arguing a civil standard and as we've made clear in the             02:15:58
11  motions, we're looking for items that are material to the
12  defense and, again, we're stuck trying to prove conduct and
13  facts that are designed not to be proven and that depend in
14  large part on changing facts and circumstances.

15          So the way in which an arms deal might be done                   02:16:15
16  covertly through Turkey into Syria is, for sure, at least
17  somewhat different than the way in which an arms deal might be
18  done through Qatar to get weapons to Libya.  But until -- but
19  discovery on that issue might allow us to extract, for example,
20  common elements that are common to both deals and would allow           02:16:34
21  us, then, to argue that there is substantial overlap between
22  the two and that this bears multiple indicia of Government
23  action.

24          So -- and we're not suggesting that we wouldn't --
25  that this is an all-or-nothing proposition.  And to the extent          02:16:48

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1   that Your Honor orders certain disclosures that are not 100      02:16:51

2   percent of what we ask for, we're not seeking to possess all of

3   the classified information the Government has ever had.  We

4   just want what we need to prove, that Mr. Turi was working with

5   the CIA.                                                          02:17:05

6          THE COURT:  Tell me -- you didn't address this in

7   your brief.  Tell me why request six is relevant.  That is the

8   request for evidence, for documents showing the U.S.

9   participation or refusal to participate in the UN investigation

10  of events in Libya.                                               02:17:21

11         MR. CABOU:  Your Honor, I think perhaps request --

12  both requests five and six we might have done that includes the

13  sub bullet that says it that might be duplicative, to some

14  extent, of other items that we've covered.

15         We're drawing from open source material and we know       02:17:36

16  that there was a United Nations Security Council investigation

17  into whether or not arms were covertly shipped into Libya.

18         The United States had some role in that.  Obviously,

19  they are a permanent member of the Security Council and we

20  believe that because they are a permanent member and because     02:17:54

21  there was an investigation, it is likely that that would be a

22  source of materials from which we could extract documents that

23  would tend to establish that the United States sent arms to

24  Libya.

25         Now --                                                    02:18:13

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1      THE COURT:  It seems to me what you're really doing                02:18:14

2  in five and six is you're trying to get at the same information

3  two is trying to get at.  You're trying to prove that the U.S.

4  was getting arms to the Libyan rebels.

5      MR. CABOU:  We concede that fact, Your Honor.  I                    02:18:25

6  should have been more clear just now but I think the bullet A,

7  5A, we likely, you know, should have included in six as well

8  which is this may be wholly duplicative.

9      And we are interested only in the documents to the

10  extent that they would be useful to establish that the United        02:18:39

11  States participated in the covert arming of groups within the

12  territory of Libya.

13      THE COURT:  Okay.

14      Mr. Mackie, a question.  I'm jumping to number seven.

15  Let's assume, hypothetically, that there is an e-mail within        02:18:51

16  the CIA saying:  We are getting arms into the possession of the

17  Syrian rebels covertly.  We know that the State Department

18  would never approve a request to transfer them there so we have

19  requested so-and-so broker to submit a request to the State

20  Department to transfer arms to Turkey.  And we think that will      02:19:20

21  be approved and with that understanding, we are going to then

22  have them moved to Syria.  Wouldn't that e-mail be pretty

23  relevant to this case?

24      MR. MACKIE:  No, Your Honor.  The reason I would

25  argue for that is material to preparing the defense -- and if       02:19:37

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1    his defense is he was directed or instructed to submit a          02:19:46

2    fraudulent brokering application, has nothing to do with in a

3    different country and in a different circumstance whether the

4    Government may have supplied funds or arms to a different

5    country under different circumstances --                          02:20:06

6          THE COURT:  My question is narrower than that.  Let's

7    assume there's a document that says, "We asked this arms broker

8    to lie on his request for prior approval to the State

9    Department and say the documents were going to Turkey when, in

10   fact, we want them to get to Syria."  Hypothetically, if that     02:20:21

11   document exists, you're arguing that's irrelevant in this case?

12         MR. MACKIE:  It's irrelevant because the

13   circumstances of what happened in Mr. Turi's circumstance and

14   that situation, if he says they did it over there so,

15   therefore, it happened here, I don't have to prove any           02:20:39

16   authority.  I don't have to prove anything.

17         THE COURT:  No.  He would say, "I have to prove it,"

18   but what he would say, "This corroborates my story.  They did

19   exactly in Turkey what they told me to do with Qatar and UAE."

20   And doesn't it corroborate it?  Wouldn't that be pretty          02:21:00

21   powerful evidence in front of a jury if it was the same kind of

22   a deal in Turkey?

23         MR. MACKIE:  Well, it would go basically back to,

24   say, the *Rewald* case which essentially says, okay, here's

25   somebody doing a drug buy; all right?  And it basically says,     02:21:13

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1   "The FBI told me to do this drug buy," and what they asked for        02:21:19

2   specifically was information related to the FBI and the

3   defendant, not whether the FBI had an undercover operation with

4   somebody else because they would say, "See, they did an

5   undercover operation using a CI just like I did."  The           02:21:37

6   relevance to that is none because whether under those

7   circumstances they had authority, had direction, has nothing,

8   no bearing on *Rewald's* case.

9        And what the Court said was, you can get

10  communications between the Government and you, not          02:21:57

11  communications between the Government and somebody else,

12  similar to -- the other cases we cited which, essentially,

13  says, hey, the intelligence activities -- and that's *Rewald* as

14  well -- any other things going on has no bearing on whether or

15  not you were instructed to do something.          02:22:24

16       The Court affirms the exclusion of the -- talking

17  about the exclusion of evidence, details of intelligence -- and

18  this is in *Rewald* -- of intelligence activities on the basis

19  that it did not prove it is not probative and irrelevant that

20  the CIA instructed the defendant to spend money to cultivate      02:22:48

21  whatever, you know, foreign nationals.

22       That's where the focus is, is the relevance to -- the

23  defense was that I was directed to do this.  And just like in

24  the other instances, whether in other circumstances the

25  Government may have conducted something with a different party      02:23:12

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1    under different circumstances has no bearing or no relevance on          02:23:16
2    what happened in this instance.
3            In other ways you could always argue, "I was doing
4    just what I thought other people were doing."
5            THE COURT:  Okay.  I understand that position.                    02:23:32
6            My understanding is that eight and nine are not in
7    dispute.  Is that right?
8            MR. CABOU:  Your Honor, I am a little bit unclear,
9    honestly, as to what's not in dispute.  There are parts of the
10   brief that make it seem as though that eight and nine are not    02:23:53
11   in dispute.
12           THE COURT:  Well, let me clarify.  Mr. Mackie, are
13   you going to produce the documents called for in eight and
14   nine?
15           MR. MACKIE:  Eight and nine?                                       02:24:04
16           THE COURT:  Yes.
17           MR. MACKIE:  We are, yes.
18           THE COURT:  That's my understanding and that's now on
19   the record, Mr. Cabou, that they are going to produce any
20   documents called for in eight and nine.                          02:24:12
21           MR. CABOU:  Thank you.
22           THE COURT:  Okay.
23           All right.  What I'm going to do is, as I said, I
24   haven't had time to read the cases.  If I find, after I read
25   them, that I need additional clarification, I'm going to get     02:24:24

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1    you on the phone on the record to ask you some additional          02:24:27

2    questions.  I think after hearing your answers today and having

3    read the briefs, I understand the position of both parties and

4    I think I'll be able to rule.  So what I'm going to try to do

5    is get you a ruling on the motion to compel next week, by the     02:24:39

6    end of next week.

7                And if I order some things produced, then I assume

8    the Government will take upon itself the burden of, if it

9    thinks it's necessary, asking for some sort of procedure under

10   Section 4.                                                        02:24:57

11               And I'm also assuming that if the Government does

12   that, there will be notice given to the defense that at least

13   that's happening without disclosing sensitive information.

14               MR. MACKIE:  Yes, Your Honor.

15               THE COURT:  And we can then talk about what, if       02:25:07

16   anything, I should get from the defense if we're going to have

17   some sort of a Section 4 procedure.

18               There are two other things I want to mention with

19   you.  We have a November 4 trial date.  Obviously, that's not

20   going to work.  What do you want to do with that trial date,      02:25:33

21   Mr. Cabou?  One of the issues we talked about last time is

22   whether this case becomes complex in which event the Speedy

23   Trial Act clock isn't running and there's less of a concern

24   about the trial date but; as of today, we're under the Speedy

25   Trial Act.                                                        02:25:48

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1        MR. CABOU:  Your Honor, from the defense perspective,    02:25:50

2   we talked about this a little bit when Ms. Brook was here but

3   I'm not sure Mr. Pimsner was here that day.  We believe it's

4   inappropriately designated a complex case.  Already it's clear

5   that in order to get that information, we need the Speedy Trial   02:26:02

6   rights.  While we would like to exercise that, it's just not

7   practical.  To the extent that Your Honor would designate it to

8   make it complex, we would make it.  To the extent Your Honor

9   wants a written motion, we will provide one forthwith.

10       THE COURT:  Is there any objection to this case being    02:26:19

11  designated as complex?

12       MR. MACKIE:  Yes.

13       THE COURT:  There is?

14       MR. MACKIE:  Yes.

15       THE COURT:  On what basis?    02:26:25

16       MR. MACKIE:  We believe that the discovery issues, if

17  they are dealt with near term, then I have been and I am sure

18  Mr. Cabou has been both in complex cases, this is something we

19  can do in three days, four days.  It involves --

20       THE COURT:  Something, you mean a trial?    02:26:43

21       MR. MACKIE:  A trial.  This is not bank fraud, you

22  know, 4.5.  This is a fairly straightforward case.

23       I understand that these issues that the defendant has

24  raised with regard to large discovery issues.  If that is

25  resolved, it's a simple case.  So I understand in terms of    02:27:09

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1   speedy trial issues, but the same point while motions are                02:27:11
2   pending that tolls the speedy trial clock.

3              MR. CABOU:  Your Honor, if I may.  I am frankly --

4              THE COURT:  Mr. Cabou, let's not argue this point
5   now.                                                                     02:27:23

6              MR. CABOU:  Just one procedural note?

7              THE COURT:  Yes.

8              MR. CABOU:  I do want to at the appropriate time,
9   whether it's now or down the road, but in part because
10  Mr. Slade is here, note that what we do anticipate, a Section 5          02:27:31
11  notice regarding our intent to put on affirmative testimony of
12  people who at least have had clearances and would likely have
13  their testimony covered with CIPA.  So to the extent --

14             THE COURT:  Okay.  That's different than what you
15  said at the last hearing so you are altering what you are               02:27:48
16  thinking?

17             MR. CABOU:  Yes.  We are altering our thinking.  And
18  as recently as yesterday, we are still getting discovery.  We
19  don't have all of the discovery.  There is an outstanding
20  letter on nonclassified discovery, so this is not simple.              02:27:59

21             THE COURT:  Let me tell you what I would like to do.
22  Rather than wrestle with the question of Speedy Trial Act right
23  now, which ought to be wrapped up with any case schedule, I
24  think I would like to set another case management conference
25  out about a month or two.  Let me think about it for a minute.         02:28:18

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1    What I would like to do is have time for you to look    02:28:21

2    at the motion to dismiss ruling, have time to see my ruling on

3    the motion to compel, see if that's going to trigger, in and of

4    itself, CIPA procedures separate and apart from what the

5    defense might request, and then talk again.    02:28:41

6         I don't know that you need to make the flight out for

7    this conference, Mr. Mackie.  You can be on the phone if you

8    want but I believe we ought to talk then in light of those

9    factors about what CIPA proceedings we think are needed when

10   they can happen, project down the road so we can get a    02:28:56

11   reasonable estimate of when trial will come and at the same

12   time I'll be asking for your thoughts on what pretrial schedule

13   is.  We can also address whether we ought to designate it

14   complex to ease the Speedy Trial Act issues.

15        Let me look at the calendar for a minute about    02:29:14

16   another status conference.

17        MR. MACKIE:  Your Honor, if I could confer for just

18   one moment?

19        THE COURT:  Yes.  Go ahead.

20        (Counsel confer.)    02:30:08

21        THE COURT:  All right.  Counsel, as I look at my --

22   in November up to the Thanksgiving week.  I don't want to make

23   you come up just before Thanksgiving.  I'm looking at December

24   2 as a date for another status conference.  Would that work for

25   you all?    02:30:56

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1          MR. MACKIE:  I'll be here, Your Honor.                     02:30:58

2          THE COURT:  You really can be on the phone if you

3     don't want to fly across the country.

4          MR. MACKIE:  Why would I not to be here?

5          MR. CABOU:  Why would Mr. Mackie not want to be in        02:31:08

6     Arizona in December as opposed to -- the District of Arizona

7     rather than in the District of Columbia?

8          THE COURT:  Is that fine with you, Mr. Cabou?

9          MR. CABOU:  That's fine with us, Your Honor.

10         THE COURT:  All right.  We will have a status             02:31:16

11    conference on December 2.  What I'm going to ask you to do is

12    three business days beforehand file a joint case management

13    plan and that will require you to confer about what CIPA

14    procedures you all think are needed, how long you think they

15    will take.                                                     02:31:35

16         But present to me, if you would, a plan for what the

17    discovery events, expert disclosure events, 404(b) events,

18    ought to be in the case and how soon you think you'll be ready

19    for trial and we'll talk about that on December 2.  I would

20    like to do it earlier but November is a bit jammed up.         02:31:51

21         Does the Government have matters you will want to

22    raise today that we haven't covered?

23         Oh.  I'm sorry.  Wait a minute.  In light of this, we

24    need to move the trial date.  Are you agreeable, Mr. Cabou, to

25    our moving it 60 days, to the second Tuesday of January, with  02:32:11

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1  the understanding that we'll talk about that in December?  I'm     02:32:15

2  not going to surprise you in December and say you absolutely

3  have to go to trial then unless the parties think you'll be

4  ready.

5          MR. CABOU:  Your Honor, we're agreeable to 60, 90     02:32:24

6  days.

7          THE COURT:  I typically don't do more than 60 because

8  I want to keep some control on the case.

9          Is the Government all right with that?

10          MR. PIMSNER:  Yes, Your Honor.     02:32:34

11          THE COURT:  The defendants agree to exclude time.

12          MR. CABOU:  We agree to exclude time.

13          THE COURT:  Okay.  Then we'll set it for.

14          COURTROOM DEPUTY:  January 13.

15          THE COURT:  January 13.     02:32:42

16          Okay.  Was there any other matter that the Government

17  wants to raise?

18          MR. PIMSNER:  No, Your Honor.  Thank you.

19          THE COURT:  How about from the defense?

20          MR. CABOU:  No, Your Honor.     02:32:49

21          THE COURT:  Okay.  Sorry I kind of had to hurry

22  through this.  I need to talk to you about an ex parte motion

23  regarding defense costs so let's talk about that briefly.

24          COURTROOM DEPUTY:  2 o'clock for the hearing.

25          THE COURT:  Yes.  Thank you.     02:33:00

United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1          2 o'clock on December 2.                                              02:33:01

2          Mr. Cabou, will you just come up to sidebar so that

3     we can talk about that ex parte motion?

4          MR. CABOU:  I objection to Mr. Samuels coming up.

5          (Whereupon, these proceedings recessed at 2:34 p.m.)

6                         *  *  *  *  *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    United States District Court

CR-14-00191-PHX-DGC(DKD), October 17, 2014

1                       C E R T I F I C A T E

2

3          I, ELAINE M. CROPPER, do hereby certify that I am

4     duly appointed and qualified to act as Official Court Reporter

5     for the United States District Court for the District of

6     Arizona.

7

8          I FURTHER CERTIFY that the foregoing pages constitute

9     a full, true, and accurate transcript of all of that portion of

10    the proceedings contained herein, had in the above-entitled

11    cause on the date specified therein, and that said transcript

12    was prepared under my direction and control, and to the best of

13    my ability.

14

15         DATED at Phoenix, Arizona, this 25th day of November,

16    2015.

17

18

19

20                       s/Elaine M. Cropper

21                       _____

22                       Elaine M. Cropper, RDR, CRR, CCP

23

24

25

United States District Court