1               UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF ARIZONA

3          _____

4   United States of America,        )
                                     )
5                  Plaintiff,        ) CR-14-00191-PHX-DGC (DKD)
                                     )
6          vs.                       ) Phoenix, Arizona
                                     ) December 18, 2015
7   Marc Turi, Turi Defense Group,   )
                                     )
8                  Defendants.       )
   _____)

9

10

11

12

13          BEFORE:  THE HONORABLE DAVID G. CAMPBELL, JUDGE

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                  STATUS CONFERENCE

16

17

18

19

20

21  Official Court Reporter:
    Patricia Lyons, RMR, CRR
22  Sandra Day O'Connor U.S. Courthouse, Ste. 312
    401 West Washington Street, SPC 41
23  Phoenix, Arizona  85003-2150
    (602) 322-7257
24
    Proceedings Reported by Stenographic Court Reporter
25  Transcript Prepared with Computer-Aided Transcription

1                                  **A P P E A R A N C E S**

2

3      For the Government:

4               U.S. Attorneys Office
                By:  **KRISTEN BROOK,** ESQ.
5               By: **RAYMOND WOO,** ESQ.
                40 N. Central Ave., Ste. 1200
6               Phoenix, AZ  85004

7

8               US Department of Justice
                Counterespionage Section
9               By:  **JULIE EDELSTEIN,** ESQ.  (telephonically)
                600 E St. NW, 10th Fl.
10              Washington, DC  20004

11

12     For the Defendants:

13              Perkins Coie, LLP
                By:  **JEAN-JACQUES CABOU,** ESQ.
14              By:  **THOMAS D. RYERSON,** ESQ.
                P.O. Box 400
15              Phoenix, AZ  85001

16

17     Also Present:

18              Scooter Slade (telephonically)

19

20

21

22

23

24

25

16:29:08  1                        **P R O C E E D I N G S**

       2

       3          THE COURTROOM DEPUTY:  Criminal case 14-191, United

       4  States of America versions Marc Turi and Turi Defense Group,

16:03:31  5  time set for status conference.

       6          MS. BROOK:  Good afternoon, Your Honor.  Kristen

       7  Brook and Julie Edelstein on behalf of the United States.

       8  Julie is appearing telephonically.

       9          Also of note, Your Honor, as Your Honor knows, AUSA

16:03:42 10  Raymond Woo is also in the courtroom.

      11          THE COURT:  All right.  Good afternoon.

      12          Mr. Woo, you ought to come up because we may involve

      13  you in the discussion.

      14          MR. CABOU:  Good afternoon, Your Honor.  Jean-Jacques

16:03:53 15  Cabou and Thomas Ryerson of Perkins Coie on behalf of the

      16  Defendants.  Mr. Turi's presence is waived.

      17          THE COURT:  All right.  Good afternoon.

      18          I think we also have Mr. Slade on the phone?

      19          MR. SLADE:  Yes, Your Honor, I'm here.

16:04:07 20          THE COURT:  Okay.

      21          All right.  Counsel, I have read the memoranda that

      22  you filed: the government's --  I'm sorry, defendants'

      23  memoranda seeking these interviews, the two responses from the

      24  government, and the defendants' reply.  And I've spent a fair

16:04:23 25  amount of time looking at case law and puzzling through this.

16:04:28  1          I think before we talk about the precise resolution,

2    I'd like to give you an opportunity to address any further

3    thoughts you all have had now that the briefing is completed,

4    if any.

16:04:42  5          It's a defense motion.  Mr. Cabou, do you have

6    thoughts that you didn't express in the briefs that you'd like

7    to address?

8          MR. CABOU:  Your Honor, I really don't have

9    additional thoughts.  I would be very pleased to answer

16:04:54 10   whatever questions the Court might have, but in the absence of

11   any questions we would simply stand on the papers.

12         THE COURT:  How about from the government?

13         MS. BROOK:  Your Honor, if I may just briefly as it

14   responds to our component, so trial counsel's component filing

16:05:11 15   in this particular case.  Defense counsel stated in their

16   reply that the information that is being sought currently is

17   information that has not been the subject of prior litigation

18   and therefore not subject of the prior order.  And I just

19   wanted to refocus for a moment on defendants' first motion to

16:05:28 20   compel production of disclosure, which was Document 55.  And

21   in that particular motion, what he said specifically, the

22   nature of their request was not only -- it was documents and

23   other evidence relating to, and then he creates a number of

24   categories of information that he wanted.  But throughout each

16:05:48 25   of those requests, obviously the cited time period was 2010

16:05:53  1    through the date of that particular filing, which was October

2    3rd of 2014.

3        The Court considered that filing, our response, the

4    reply, and issued the order on October 22nd which stated that

16:06:12  5    defendants' request for any information was overly broad, and

6    specifically narrowed and tailored the obligation in terms of

7    discovery order for the government to a time period which

8    would be relevant to the indictment and relevant to the case

9    and cited that specifically as being between the time periods

16:06:27 10    of 2010 and 2011.

11        So the government just highlights the fact that it is

12    our opinion that this motion is one that is going back and

13    attempting to redo filings that have happened over 14 months

14    ago and rehash an issue already issued and ordered by the

16:06:44 15    Court.

16        THE COURT:  All right.

17        Well, let me share with you a few conclusions and

18    thoughts and get your reaction.

19        With respect to the issues that were briefed and

16:07:02 20    argued, I do not believe my ruling at Docket 63 controls this

21    issue.  I stated that very clearly in the hearing we had with

22    Mr. Woo.

23        The issue I was addressing in Docket 63 was whether

24    specific categories of document requests were discoverable

16:07:24 25    under Federal Rule of Criminal Procedure 16(a)(1)(E)(i).  That

16:07:30  1   was the focus.  It wasn't a *Brady* discussion.  It didn't focus

2   on evidence outside of the nine categories of document

3   requests.  We've never litigated in this case the *Brady*

4   disclosure obligations with respect to the items that were

16:07:48  5   outlined in the defense's *Touhy* letters.  So I don't view

6   Docket 63 as controlling.  Certainly what I decided there is

7   relevant because it is a discovery decision, but I don't think

8   it controls this issue.

9        A second conclusion:  I do not agree with the

16:08:10  10  assertion in the government's response that interviews are not

11  permitted under CIPA.  I don't read the statute as limiting

12  CIPA to documents.  And I understood, I think, the argument

13  that was made as the distinction between Sections 3 and 4 on

14  one hand and Sections 5, 6, and 8 on the other.  I just don't

16:08:37  15  see it in the statute, and there was no case law cited for

16  that distinction.

17        And certainly because CIPA doesn't determine

18  discovery rights, CIPA couldn't cut off a defendant's right

19  under *Brady* to get information that's in the possession of a

16:08:56  20  government witness, because CIPA doesn't control discovery

21  rights.

22        So I don't agree that I can resolve this by looking

23  at the statute.

24        I disagree with the defendants' argument that there

16:09:15  25  is some obligation on the part of the government to permit

16:09:19  1    these interviews outside of *Brady* based on the due process

2    clause.

3         The cases cited by the defendant, which was my

4    decision in the *Goldfarb* case, *Gregory*, *Cook*, a whole host of

16:09:33  5    cases, are all cases where the government affirmatively

6    interfered with the defendant's ability to interview a

7    third-party fact witness.  None of them concerned a witness

8    who was a government employee and who was under either an

9    employment or contractual restriction not to disclose

16:09:54 10   government information.  And so I don't believe those cases

11   stand for the proposition that the defendants have a due

12   process right independent of *Brady* to interview the witnesses.

13        This boils down to a *Brady* issue, in my view.

14   Clearly, defendants are entitled to *Brady* information and the

16:10:11 15   government has an obligation to turn over *Brady* information.

16        Am I correct in my assumption that government counsel

17   agrees that *Brady* disclosure obligations are not limited to

18   documents?

19        MR. WOO:  That is correct, Your Honor.

20        THE COURT:  So in a typical case where you learn that

16:10:33 21   the government witness knows something that falls under *Brady*,

22   what is the procedure you use to disclose that under Brady to

23   the defense?

24        MR. WOO:  We would document it and then just turn it

16:10:51 25   over.  If it's *Brady*, then that's what we would do.

16:10:55   1          THE COURT:  How would you document it?

2          MR. WOO:  Depending on the source -- depends on each

3     AUSA.  Sometimes I would put it in an e-mail, send it to the

4     defense, or have an agent interview that witness and document

16:11:09   5     it that way and forward it on to the defense.

6          THE COURT:  Okay.

7          Mr. Woo, another question for you on what's going on

8     in the case.  When we were here a few weeks ago -- and, I'm

9     sorry, I'm forgetting the name of the gentleman from

16:11:31  10     Washington who was with you --

11          MR. WOO:  Scott McCulloch.

12          THE COURT:  Yeah, Mr. McCulloch.  He indicated at

13     that time that the CIA was willing to and wanted to

14     voluntarily produce witnesses that the defendants were going

16:11:50  15     to interview with respect to Categories 1 and 2, recognizing

16     there were CIPA issues that might need to be addressed.  But

17     since that time, you or the defense, I think it was you, have

18     filed a letter from the CIA saying the *Touhy* requests are

19     denied, you can't get any of this.  Is that a change in the

16:12:13  20     position of the CIA since we were here talking about this

21     issue with you and Mr. McCulloch.

22          MR. WOO:  It is.  It is, Your Honor.  And at the time

23     of that hearing we had in November, that was our -- certainly

24     our belief, that the CIA at the time was inclined to permit

16:12:31  25     these interviews if the circumstances were correct and the

16:12:35 1   regulation would allow it.  But as I understand it, they

2   drilled down into the issue.  They ultimately decided to deny

3   the request.

4            THE COURT:  All right.  What's happened with the

16:12:56 5   Navy?

6            MR. WOO:  They're still in the process of working

7   with the defense on that.  I know there's been some e-mail

8   correspondence.  I know they've -- they did issue a letter

9   saying they denied the request, but they wanted some

16:13:08 10   additional information to determine, essentially, the

11   classification level of the information.  And I -- as far as I

12   can tell, they are trying to work with the defense at this

13   point.

14            THE COURT:  So when we were here before and I set

16:13:24 15   December 11 as the sort of deadline to work out the interview,

16   am I correct in understanding the decision was to not do

17   anything?  That decision was made by December 11?  That is,

18   not to produce any witnesses?

19            MR. WOO:  By the CIA?

16:13:39 20            THE COURT:  Yes.

21            MR. WOO:  The initial letter they sent was dated

22   December 9.  That is correct.

23            THE COURT:  Okay.  Let me tell you what my thoughts

24   have been on this issue.

16:13:50 25            The defendants claim that these individuals they want

to interview have information that would be favorable to the
defense.  *Brady*, I think, sets a fairly low threshold for
pretrial disclosures.  If it's favorable to the defense,
either because it could be exculpatory or impeachment, it's
turned over.  And the defendants claim these individuals have
that kind of information.

The defendant -- the government doesn't address that
issue in the briefing.  Doesn't talk about whether or not the
information in the possession of these individuals satisfies
*Brady*.  The arguments made were it's not discoverable under
CIPA and it's foreclosed by my order of Docket 63.

I'm not foreclosing the government from making a
*Brady* argument, but I think that's where we are is that the
defendants say this would be *Brady* and the government hasn't
agreed with that.

If we look at the order I entered at Docket 250,
which was my effort to try to bring some structure to how you
make a decision on CIPA issues, finding at least for me a
surprising lack of authority in the circuit case law, I came
up with a four-step process.

Step one is the defendant has to establish a legal
entitlement to information, whether under Rule 16 or *Brady* or
*Jencks*.

Secondly, if the government wishes to invoke CIPA, it
needs to make a formal claim of state-secret privilege from

16:15:38   1   the head of the agency, and I ruled that it has to be the head

2   of the agency.

3            Third, I then evaluate whether the information the

4   government wishes to withhold would be helpful and relevant to

16:15:53   5   the defense within the meaning of the *Roviaro* case.

6            And if I conclude it would be, then, Number 4, I

7   balance the government's interest against the defense interest

8   using the test I tried to articulate in Docket 250, which was

9   whether there's a reasonable probability that it would affect

16:16:15   10   the outcome of the trial.  That's what I thought was the right

11   test to apply in deciding what must be disclosed.  I haven't

12   seen anything in the cases or reading briefs that makes me

13   think that is incorrect.

14            But if I take that four-part approach and apply it to

16:16:34   15   this issue, we've got this situation:  Number one, whether the

16   defendants are entitled to it under *Brady*.  I don't know and I

17   can't tell because I don't know what the witnesses know and

18   the defendants can't tell me what the witnesses know because

19   they haven't interviewed them.

16:16:51   20            On Number 2, whether the government will or can make

21   a claim of state-secret privilege with respect to what the

22   witnesses know, presumably can only be decided when they know

23   what the witnesses know.  And I do not believe that the prior

24   invocation of the state-secret privilege with respect to

16:17:10   25   documents covers information in the possession of these

16:17:14  1   witnesses because we don't know that it's the same as what's

2   in the documents.  So I think there's going to need to be a

3   new invocation of the state-secrets privilege.  But whoever

4   does that will have to know what the witnesses know.

16:17:28  5        Number 3, deciding whether it's relevant and helpful.

6   If Step Number 1 is a *Brady* inquiry, if the legal basis for

7   the defense getting information is *Brady*, then Step 3 will be

8   satisfied because if it's going to be disclosable under *Brady*,

9   it will be relevant and helpful to the defense.  So 1 and 3

16:17:49 10   sort of collapse when we're dealing with *Brady* at Step 1.

11        But then at Step 4, if in fact the government has

12   invoked the state-secrets privilege, I've got to balance, and

13   how do I do that if I don't know what the information is?  I

14   don't know what is in the knowledge of these witnesses.

16:18:07 15        So it seems to me we're in a situation where

16   everybody's handicapped in moving through that four-step

17   process unless we know what these witnesses know.

18        I don't think I can say to the defendants you don't

19   get anything, inquiry over, without asking whether or not what

16:18:30 20   these agents know satisfies *Brady*.

21        So what do we do in that situation?  I thought, well,

22   if we -- if I say interviews can go forward, I'm sort of

23   jumping to the end of the process and letting a disclosure

24   occur without going through the four steps to decide if it is

16:18:47 25   *Brady* or if it is protectable under CIPA.  So I don't think I

16:18:51  1   can just say interview them and based on what they say I'll

2   decide if it's *Brady* and decide if it's covered by CIPA

3   because it will have been disclosed.

4        So it occurred to me maybe what we need to do, and

16:19:03  5   this is what I'm throwing out for your reaction, is have the

6   defendants, as precisely as they can, say this is the

7   information we think they have that's relevant, have the

8   government interview these seven people and produce a report

9   of what they say in those categories.

16:19:23  10       Now, if the government concludes after doing that

11   that this information is not *Brady*, then they can give it to

12   me and say "we think it's not *Brady*" and I can decide.

13       If the government looks at it and says, "Well, even

14   if it is *Brady*, it's a state-secret privilege that we don't

16:19:40  15   want to disclose," then you can give me that and I can decide

16   after you've invoked the state-secret privilege formally, and

17   I can then do a balancing because I'll at least have in my

18   hand an indication what the witnesses know.

19       That's not ideal for the defendants because you'd

16:19:57  20   like to be the one asking the questions, but I don't see that

21   *Brady* gives you that right until I've made a decision as to

22   whether or not it satisfies *Brady*.

23       And there is no other right to interview witnesses

24   that I think exists in terms of -- government witnesses in

16:20:15  25   terms of defense rights.  I don't agree with your due-process

16:20:18  1    argument.  Rule 16 doesn't allow it.  Many cases have said the

       2    Constitution doesn't create a general right to discovery on

       3    the part of defendants.

       4            It's not ideal to the government because you've got

16:20:31  5    to go through the work of interviewing witnesses and creating

       6    records.  But I don't know how else I can make a determination

       7    under *Brady* or CIPA as to whether or not it's discoverable, or

       8    you can make a determination as to whether or not it's subject

       9    to a state-secrets privilege.

16:20:50 10            So that's what I have been wrestling with, and I'm

      11    interested in your reactions.

      12            MR. WOO:  Appreciate the Court -- appreciate the

      13    Court in trying to be fair in these matters.  The only thought

      14    I have, Your Honor, is I think it would set a bad precedent in

16:21:09 15    the sense that defense counsel in these types of cases would

      16    then give a laundry list of witnesses to the government to

      17    interview.

      18            And in this particular case, even in the defendants

      19    reply they're not asserting that they know conclusively these

16:21:24 20    people have information; they suspect it.

      21            And I do think there's a mechanism here that the

      22    Court can employ that would satisfy both parties.  I mean, if

      23    the defense truly believes these witnesses are helpful to

      24    their defense I would say they should issue a trial subpoena.

16:21:42 25    At that point, as I understand it, and, again, I'm not a

16:21:47  1    subject-matter expert in CIPA, those provisions of CIPA would

2    allow some type of voir dire questioning in court to determine

3    the substance of the knowledge that they have.

4        I just do have some concerns about setting up a new

16:22:02  5    mechanism that could have a detrimental impact on the

6    government in the future if the defense counsel are allowed to

7    give us laundry list of witnesses that we need to interview to

8    essentially discover information they believe we have.

9        I would also say if -- and I can't speak for the

16:22:22  10   prosecution team.  Speaking on behalf of the taint team, as

11   prosecutors we know there's *Brady* materials and obviously will

12   endeavor to disclose that.

13       I think underlying these filings by the defense is

14   that perhaps the government is withholding some type of *Brady*

16:22:37  15   material, and I haven't seen anything of that.  Again, I'm

16   speaking primarily on behalf of the taint team.

17       THE COURT:  Well, a couple thoughts.  And I

18   appreciate those thoughts, Mr. Woo, but a couple thoughts in

19   response.

20       I agree -- and, incidentally, I'm not trying to craft

16:22:47

21   some procedure to become a new rule of criminal procedure

22   applicable in all cases, I'm just trying to solve the problem

23   here.

24       But it seems to me even applying it here I would have

16:23:00  25   to be satisfied that the defendants have made a colorable

16:23:03  1   showing that there is *Brady* information in the possession of

2   these individuals.  And I think, based upon what I know of the

3   case, there probably is.  I don't know for sure.  But *Brady*

4   just has to be favorable to the defense.

16:23:16  5         I've heard a fair amount from the defendants about

6   their theory of the case.  I've heard from the government.

7   I've been living with the case for a number of months.

8         I agree it wouldn't make sense for them to just come

9   in and say here's 30 witnesses, go interview them.

16:23:32  10        My other thought is the procedure that I am

11   describing doesn't give them anything until, number one, I

12   decide it satisfies *Brady*, and, number two, I satisfy myself

13   after a CIPA balancing that they're entitled to get it.

14        So it creates work for the government, I recognize.

16:23:58  15   But it doesn't go anywhere until I decide it's

16   constitutionally required to be disclosed under *Brady* and it

17   must be disclosed under CIPA when balancing.  And if it meets

18   those two tests, it ought to go to them.

19        I invite a reaction.  Those are the thoughts I've

16:24:19  20   had.

21        MR. WOO:  I don't -- I don't know the full extent of

22   the case so I can't speak to the whole *Brady* issue.

23        Certainly if I were to interview a government witness

24   and what they say is *Brady* I'm not going to go to the Court

16:24:34  25   and say, you know, that we should withhold this from the

16:24:36  1    defense.  My recommendation would be to just turn it over,

2    unless there are other state secrets or other things that need

3    to be litigated through the court.

4         I think I've essentially expressed all the

16:24:53  5    government's concerns about setting this up.  My preference

6    would be if they truly believe these witnesses would be

7    helpful, they issue a trial subpoena.

8         THE COURT:  Oh, I appreciate you mentioning that.

9    Let me get your thoughts on that.  The reaction I have on that

16:25:06  10   idea is this:  If I knew that they had subpoenaed these

11   witnesses for trial and that there was going to have to be a

12   process as these witnesses testified to figure out if what

13   they're saying is a state secret and, if it is, whether or not

14   it should be disclosed or how it should be disclosed or

16:25:23  15   whether there should be substitute information, I darn sure

16   wouldn't say that's going to happen during trial.  I'm not

17   going to have the jury going out for three hours and work

18   those issues, have them come in, get another half hour into

19   the testimony, send them out.  I just wouldn't do it.

16:25:40  20        So what I would do, and will do, I think, unless you

21   all persuade me otherwise, if we have to go through a CIPA

22   Section 5 process is I'll have a pretrial hearing.  Get them

23   out here, have the defense ask the questions, decide whether

24   or not it's privileged and make rulings so we know what they

16:25:57  25   can testify to at trial.

16:25:59    1          It occurs to me that that's a much more comprehensive

2      disclosure tool for the defense attorneys than what I've

3      proposed because they get to actually ask the questions and

4      hear the answers.

16:26:12    5          Now, we can go down that road, but I had assumed,

6      perhaps incorrectly, that that was more intrusive to the state

7      secrets than what I had suggested.  And maybe that is a better

8      solution to just use that CIPA procedure.

9          But, again, I wouldn't -- I think trying to do that

16:26:31   10      during trial would be a nightmare for a jury.

11          MR. WOO:  With your permission, Your Honor, I would

12      like to be able to speak to, obviously, Scott McCulloch in the

13      National Security Division to find out what their position

14      would be because I don't want to handcuff what they ultimately

16:26:48   15      would say to the Court.

16          But before I give you my position, I would certainly

17      like to talk to them about it.  I can file something with the

18      court by next week, by Monday, let you know what the position

19      of the government would be.

16:27:00   20          THE COURT:  All right.

21          Ms. Brook, did you have any other thoughts?

22          MS. BROOK:  No, Your Honor.

23          THE COURT:  Okay.

24          Mr. Cabou?

16:27:06   25          MR. CABOU:  Thank you, Your Honor.

16:27:07  1          I think our thoughts are short.  We certainly

2     recognize the ability to issue trial subpoenas and that that

3     would likely trigger the process that Your Honor just

4     outlined.  Frankly, we haven't done that, in part because we

16:27:25  5     were loathe to set up what seemed to be a very time-consuming

6     process, although ultimately it may be less time, I don't

7     know.  But we're still in a very early phase of discovering

8     this material, even though it's an extensively litigated

9     issue.

16:27:38 10          And, you know, with that in mind we've gone down this

11    road of seeking these interviews.  We understand Your Honor

12    has made certain rulings about authority other than *Brady*.

13    But in terms of this, we share the government's appreciation

14    for the Court's obvious effort in wrestling with what would be

16:27:55 15    a process that affords us the rights we have and respects the

16    government's legitimate interest in secrecy, which we've never

17    sought to challenge.

18          Your Honor anticipated our reser- -- what are our

19    reservations about the idea that essentially the government

16:28:11 20    would get to preinterview the witnesses, you know, asking our

21    questions.

22          You know, a good fact-finding interview is one that

23    follows up on information within the interview, and I think it

24    is very difficult for us to -- it's difficult for us to

16:28:31 25    conduct an interview we're not at.

16:28:37    1          I would also say I appreciate that Mr. Woo has not

2    been party to the entirety of the proceedings here, but I

3    would just reaffirm for everyone, including the Court and

4    counsel, that we have not submitted a laundry list of people.

16:28:48    5    We have tried to be very targeted in submitting a list of

6    people who we have done as much open source research as is

7    humanly possible to determine that they have -- well, we

8    strongly believe that they have information that is *Brady*

9    information.  So I want to assure Mr. Woo -- and I should note

16:29:08   10    that he and I have had a number of pleasant discussions on

11    this topic even though we haven't always reached agreement.  I

12    want to assure everyone it's not our goal to send the

13    government out to interview 30 people.  We are seeking what we

14    believe strongly and in good faith to be *Brady* information.

16:29:24   15    And we're not asking the government to go on a wild goose

16    chase.  In fact, we'd rather do the chasing ourselves.

17          So with that, I think we've made our position clear.

18    Our preference is, of course, and we believe we're legally

19    entitled to conduct those interviews ourselves.  We understand

16:29:43   20    there's a difficulty here that I don't have a better idea,

21    candidly, on how to solve.  I wish I did.

22          I would ask that if Your Honor is inclined to

23    authorize or put in place a process whereby some government

24    lawyer or agent asks these witnesses these questions, we'd ask

16:30:04   25    the interviews be recorded.  I don't know how else we could

16:30:09  1    assure ourselves of what's going on there.

2            THE COURT:  Are you saying, Mr. Cabou, that you

3    prefer a CIPA Section 5 procedure to what I outlined?

4            And, incidentally, I haven't looked at the case law

16:30:26  5    to see if a CIPA Section 5 hearing would go as I just

6    described it.  That's my assumption.  I don't know exactly who

7    goes in and out of the courtroom at what times during a CIPA

8    Section 5 hearing.

9            MR. CABOU:  Your Honor, I haven't -- I haven't -- my

16:30:45  10   understanding, and, again, I defer to the Court and Mr. Woo

11   and Ms. Brook to correct me if I'm wrong, but my understanding

12   is that process would be triggered by our affirmative notice

13   that we intend to disclose classified information in our

14   possession.  So that's -- strictly construed, that's what a

16:31:04  15   Section 5 -- that's what I understand that process to be.

16           We don't have any such information.  So I can't in

17   good faith avow my intention to disclose that which I don't

18   have.

19           Now, if what the Court is suggesting is we kind of,

16:31:16  20   as we work collectively towards a solution, we have a quasi

21   Section 5 proceeding or we have an interview that's supervised

22   by the Court, whatever we want to call it, I think that would

23   be in the Court's discretion to supervise that interview in a

24   way that safeguards the government's interests while also

16:31:33  25   respecting the defense's right to the information -- or to

16:31:35   1    seek to discover the information, I should say.

2              THE COURT:  Well, on that point, though, you're right

3    that Section 5(a) requires notice by a defendant.  But the way

4    it reads is, "If a defendant reasonably expects to disclose or

16:31:50   5    to cause the disclosure of classified information in any

6    manner in connection with any trial or pretrial proceeding,

7    the defendant shall give notice."

8              It seems to me you subpoenaing one of these witnesses

9    to testify about the subjects you want to inquire of them

16:32:11  10    about either effectively acts as that notice or you can say,

11    "When we question them, we reasonably expect it will disclose

12    classified information."  So I guess I had assumed that the

13    act of subpoenaing them will trigger this procedure.

14             MR. CABOU:  I don't have that in front of me, Your

16:32:32  15    Honor, but based on what Your Honor just said and based on my

16    understanding of CIPA, I don't disagree with that.  In fact, I

17    agree that that would be true.

18             As I generally am, I'm conservative in the avowals I

19    would make to the Court about my belief and information.

16:32:52  20             I believe these people have classified information.

21    I believe it's *Brady*.  But since I don't know what the

22    information is, I'm going -- I can certainly say that based on

23    everything I've been able to access, I believe that to be true

24    and that is true.  But that's about the biggest avowal I can

16:33:08  25    faithfully make as an officer of the court under these

23

16:33:13  1   particular circumstances.

2          THE COURT:  Mr. slade, I know you don't like to talk

3   on the record, but have you sat through CIPA Section 5

4   hearings?  Do you know how they typically are conducted?

16:33:26  5          MR. SLADE:  Yes, Your Honor.  I think you're both

6   sort of, in my experience, on target.  The most common CIPA

7   Section 5 proceeding would involve discovery that has already

8   been produced that is classified.  However, there also are

9   cases whereby -- and this comes up sometimes in posttrial

16:33:52 10   where there's information that is learned after the fact or

11   through the course of the actual trial proceeding that then

12   causes the Section 5 trigger, so to speak.

13          THE COURT:  Okay.  Thank you.

14          The statute, Section 6(a) talks about the hearing

16:34:18 15   that is held and it says, "Within the time specified by the

16   Court for the filing of a motion under this section, the

17   United States may request the Court to conduct a hearing" --

18   that's the hearing, I think, Mr. Woo, you referred to -- "to

19   make all determinations concerning the use, relevance, or

16:34:41 20   admissibility of classified information that would otherwise

21   be made during the trial or pretrial proceeding.  Upon such a

22   request the Court shall conduct such a hearing.  Any hearing

23   held pursuant to this subsection shall be held in camera if

24   the Attorney General certifies to the Court in such petition

16:35:06 25   that a public proceeding may result in the disclosure of

classified information."

That says "in camera."  It doesn't say "ex parte."

"As to each item of classified information, the Court shall set forth in writing the basis for its determination. Where the United States motion under this subsection is filed prior to the trial or pretrial proceeding, the Court shall rule prior to the commencement of the relevant proceeding."

So maybe what we need to do, Mr. Woo, is give you a chance to confer with the folks at the Department of Justice to let us know whether you prefer that approach to what I'd proposed.

And if anybody else has a good idea on how to solve this problem, I'd love to hear it, but I just haven't been able to come up with one that allows me to make the decisions I need to make and still protects the information if it needs to be protected or shouldn't be disclosed in the first instance.

I don't want to force you to do that by Monday, Mr. Woo, which is what you had offered.  What's a reasonable time, given the fact we're in the midst of the holidays?

MR. WOO:  I know Mr. McCulloch is around on Monday so how about Tuesday, Your Honor?

THE COURT:  That's fine.  Why don't we do this:  Why don't you go ahead and file your thoughts on whether you prefer my approach or the CIPA Section 5 approach, or did you

16:36:44  1    come up with a brilliant alternative.  I'll look at that.

2    I'll do a text-only order soliciting a response if I think we

3    need one.

4        If I'm satisfied with what you've proposed, that it

16:37:01  5    meets these objectives, then I think I'll just do a text-only

6    order saying this is what we're going to do and this is when

7    we're going to do it, so we can move ahead either doing the

8    interviews or figuring out when we do the hearing.

9        MR. WOO:  I may have misspoken, Your Honor.  If I

16:37:16  10   may, can I have until Wednesday?  I'd like to order the

11   transcript to make sure I lay out precisely what the Court --

12       THE COURT:  That's fine.  If it's on Wednesday, I

13   can't look at it most of the day, but I can look at it the

14   following week.

16:37:32  15       MR. WOO:  Thank you very much.

16       THE COURT:  So, yeah, Wednesday's fine.

17       MR. CABOU:  Your Honor, I assume that if Mr. Woo and

18   I, after he speaks with his colleagues, confer and have some

19   agreement, you'd be happy to have us just file that with the

16:37:45  20   court?

21       THE COURT:  I would be very happy to have you file

22   that with the court.  So, yeah, why don't you talk after

23   you've conferred with your colleagues.

24       MR. WOO:  Yes, Your Honor, I will do that.

16:37:53  25       THE COURT:  Okay.  Is there any other matter we need

16:37:54   1      to take up today?

2                      MR. WOO:  No, Your Honor.  Thank you.

3                      THE COURT:  Okay.  Have a great holiday.

4                      MR. CABOU:  Thank you, Your Honor.

16:38:03   5                      MS. BROOK:  Thank you, Your Honor.

6                      (End of transcript.)

7                                  *  *  *  *  *

## C E R T I F I C A T E

I, PATRICIA LYONS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control, and to the best of my ability.

DATED at Phoenix, Arizona, this 21st day of December, 2015.


                              s/ Patricia Lyons, RMR, CRR
                              Official Court Reporter