JOHN S. LEONARDO
United States Attorney
District of Arizona

JULIE A. EDELSTEIN
Trial Attorney
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice

DAVID PIMSNER
KRISTEN BROOK
Assistant U.S. Attorneys
Arizona State Bar No. 007480
Arizona State Bar No. 023121
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona  85004
Telephone:  602-514-7500
David.pimsner@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-14-00191-PHX-DGC |
|---|---|
| Plaintiff, | **GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF *BRADY* INFORMATION** |
| vs. | |
| 1.  Marc Turi, and<br>2.  Turi Defense Group, | |
| Defendants. | |

The United States of America, by and through undersigned counsel, submits this response to Defendants' motion seeking the compulsion of alleged *Brady* information and respectfully requests the Court deny the motion.  Defendants' motion to compel is plainly an effort to re-litigate long-settled issues in this case.

Defendants request (1) documents showing Defendants' prior relationship with the CIA and (2) documents evidencing that senior U.S. officials contemplated sending arms to Libya.  As this Court is aware, the issue of disclosure has been extensively litigated in

this matter. The Court has issued multiple rulings on these topics, and the government has complied with the previous rulings.

First, regarding the Defendants' request for documents showing their prior relationship with the CIA, the government searched for records "within the possession, custody, or control of the CIA that reflect any kind of a working, business, or intelligence relationship between the CIA and Defendant Marc Turi and/or Defendant Turi Defense Group from 2008 to the end of 2011" as required by the Court's October 22, 2014 order. The Court is aware, through the CIPA Section 4 litigation, the extent, if any, of the information in the government's possession as it relates to Defendants' discovery request, and the government has fulfilled its discovery obligations.

Second, the Defendants' request for documents evidencing that senior U.S. officials contemplated sending arms to Libya likewise has been extensively litigated and fully settled. On October 3, 2014, Defendants filed a motion seeking in part "documents or other evidence relating to instances in which the United States assisted or ***considered assisting*** in the covert transportation, provision, acquisition, transfer, or transport of 'Defense Articles' to or from any person, entity, group of people, quasi-governmental entity, or government within the territory of Libya from 2010 to the date of the request." (Emphasis added) (Dkt. No. 63 at 3) (citing Dkt. No. 55 at 5).

On October 22, 2014, the Court found Defendants' request was "overly broad" and required the government to produce "a narrower category of information: documents which relate to efforts by the United States to arrange for arms brokers to arrange covert transfers of weapons to the NTC in Libya between the beginning of 2010 and the end of 2011" ("Category 2 documents"). (Dkt. No. 63 at 4). In so finding, the court specifically rejected the Defendants' theory that the government should have to produce any documents that show that government officials "considered assisting" in the provision of weapons.[1]

---

[1] This ruling made sense, of course, because documents merely showing that government officials considered assisting in the provision of weapons could not possibly confer actual or apparent public authority on the Defendants

- 2 -

The government searched for records as required by the October 22, 2014 order. The Court is aware, through the CIPA Section 4 litigation, the extent, if any, of the information in the government's possession as it relates to "efforts by the United States to arrange for arms brokers to arrange covert transfers of weapons to the TNC" for the relevant time frame. Accordingly, the government fulfilled its discovery obligations, and counsel for Defendant Turi was subsequently apprised of the results of the government's search in a classified document.[2]

Nevertheless, on June 16, 2015, Defendants filed a motion seeking an order requiring the government to show cause why it should not be sanctioned for failing to produce Category 2 documents relating to the Court's October 22, 2014 Order. (Dkt. No. 171). The motion was briefed and the Court conducted a status conference on August 11, 2015, during which there was an extensive discussion of the meaning of the terms "efforts" versus "contemplation," and that the government's disclosure obligations were

---

to make false statements on their applications to the State Department about the final destination of weapons they sought to provide to the NTC. The defense notes in conclusory fashion in its motion to compel that "even if the United States never *actually* arranged covert transfers, its *mere contemplation* of doing so also supports that Defendants were acting with the actual or apparent authority of the government in taking preparatory steps consistent with those considerations." Dkt. No. 345 at 2 n.2. The defense then tries to explain that information "[t]hat high levels were considering sending arms to Libya makes it more likely that Defendants were told, or at least reasonably believed they were told, to take preparatory steps for such armaments—i.e., getting authorization to send arms to the region." *Id.* at 8. Tellingly, the defense does not specify any high-level official who told the Defendants to take such steps, but somehow wants to tie mere contemplations of *any* high-level officials (regardless of whether they ever had contact with the Defendants) to a supposed grant of public authority to the specific Defendants in this case. Such a theory is not plausible, nor does it create a discovery obligation for the government. *Cf. United States v. Matta-Ballesteros*, 71 F.3d 754, 770 (9th Cir. 1995), *opinion amended on denial of reh'g*, 98 F.3d 1100 (9th Cir. 1996) (affirming the district court's ruling that where this is "no evidence of a connection between the defendants' activities and the government[,] . . . [a] defendant is not entitled to government documents relating to alleged CIA involvement in his criminal activity"). But even more importantly, the charges in this case are not that the Defendants took the preparatory step of applying multiple times to the State Department to send arms to Libya, in case the U.S. government changed its policy and decided to send arms there. The Defendants did submit such applications—legally—which were denied. The charges, rather, are that the Defendants submitted applications to the State Department in which they falsely claimed that the end users of weapons would be Qatar and the UAE, when they were really intended for the NTC in Libya. That some high-level individuals contemplated sending arms to Libya makes it no more likely that the Defendants were permitted, or believed they were permitted, to make false statements of this kind to the State Department.

[2] The government's search of records on these issues included a review for any *Brady* material. The government found none. The government also notes that the Court's ruling on its CIPA motion specifically considered the government's *Brady* obligations and found that the documents submitted by the government *in camera* need not be disclosed. (Dkt. No. 250 at 6-7).

1 limited to "efforts."  During the hearing, the Court noted that its intent in the October 22, 2014 Order was "if it relates to an effort to arm rebels, something that actually occurred, then it should be disclosed," but pointed out that "there is a difference between actively contemplating and doing it."  (RT 8/11/15 at 7, 9).  The status conference reconvened in a non-public setting for additional discussion.  Subsequently, defense counsel provided thirty-seven (37) tabbed articles purporting to show that the government failed to produce documents required by the Court's order. (Dkt. No. 249).  On October 2, 2015, the Court denied the Defendants' motion and again reiterated that "Category 2 does not call for documents relating to 'possible efforts' or 'contemplated efforts' to arm Libyan rebels." (Dkt. No. 249 at 4).

Seventeen months after the initial disclosure order rejecting Defendants' attempt to compel the production of documents showing that the United States "considered assisting" in providing "defense articles" to Libya, and five months after the Court affirmed its earlier decision, the Defendants are now again attempting to expand the definition of Category 2 documents to require disclosure of documents that relate to any "mere contemplation" of such efforts by the government.  The Defendants' attempts to re-litigate settled issues simply must stop.

Respectfully submitted this 14th day of March, 2016.

JOHN S. LEONARDO
United States Attorney
District of Arizona

*s/David A. Pimsner*
KRISTEN BROOK
DAVID PIMSNER
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on or about March 14, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Jean-Jacques Cabou, Attorney for Defendant Turi and
Thomas Ryerson and Alexis Elizabeth Danneman, Attorneys for Turi Defense Group

DP/nh