1              UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF ARIZONA

3                 _____

4    United States of America,        )
                                       )
5                     Plaintiff,       ) CR-14-00191-PHX-DGC (DKD)
                                       )
6          vs.                         ) Phoenix, Arizona
                                       ) June 3, 2015
7    Marc Turi, Turi Defense Group,    )
                                       )
8                     Defendants.      )
     _____)

9

10

11

12

13        BEFORE:  THE HONORABLE DAVID G. CAMPBELL, JUDGE

14        REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                  STATUS CONFERENCE

16

17

18

19

20

21   Official Court Reporter:
     Patricia Lyons, RMR, CRR
22   Sandra Day O'Connor U.S. Courthouse, Ste. 312
     401 West Washington Street, SPC 41
23   Phoenix, Arizona  85003-2150
     (602) 322-7257
24
     Proceedings Reported by Stenographic Court Reporter
25   Transcript Prepared with Computer-Aided Transcription

1                    **A P P E A R A N C E S**

2

3    For the Government:

4            U.S. Attorneys Office
             By:  **KRISTEN BROOK,** ESQ.
5            By:  **DAVID PIMSNER,** ESQ.
             40 N. Central Ave., Ste. 1200
6            Phoenix, AZ  85004

7

8    For the Defendants:

9            Perkins Coie, LLP
             By:  **JEAN–JACQUES CABOU,** ESQ.
10           By:  **ALEXIS DANNEMAN,** ESQ.
             By:  **THOMAS D. RYERSON,** ESQ.
11           P.O. Box 400
             Phoenix, AZ  85001
12

13

14

15

16

17

18

19

20

21

22

23

24

25

# P R O C E E D I N G S

16:29:08 1

2

3       THE COURTROOM DEPUTY:  Criminal case 2014-191, United

4   States of America versus Marc Turi and others, on for a status

13:09:06 5   conference.

6       MR. PIMSNER:  Good afternoon, Your Honor.  David

7   Pimsner and Kristen Brook for the United States.

8       THE COURT:  Good afternoon.

9       MR. CABOU:  Good afternoon, Your Honor.  J. Cabou,

13:09:13 10   Thomas Ryerson, and Alexis Danneman for the defense, along

11   with our client, Marc Turi.

12       THE COURT:  Good afternoon.

13       All right.  Thanks, counsel, for making yourselves

14   available to get in here earlier.  I'm a little under the

13:09:29 15   weather and my judicial assistant, being the good mother to me

16   that she is, moved the hearing up so I can go home and try to

17   get better.

18       But because of it, because of a number of things, I

19   have not had time to read all of the briefing on the motions

13:09:45 20   that have been filed.  In fact, the government brief was just

21   filed an hour ago, I think.

22       What I want to do, though, is talk about a few things

23   that I think we need to address, and then I'll hear your

24   thoughts on other matters we need to address.  I have held the

13:10:06 25   ex parte hearing on the government's CIPA Section 4 motion.

13:10:16    1    I've concluded after that hearing that I need to have

2    the parties brief two issues that I want to make sure I'm

3    getting the best law on.  One of those issues is the question

4    of whether the government, in order to invoke the state

13:10:43    5    secrets privilege, needs to obtain an affidavit from the head

6    of the government agency after personal consultation.

7    Now, I know the Ninth Circuit case law says that

8    that's the requirement.  That's in the *Sedaghaty* case, it's in

9    the *Sarkissian* case, I think it's in the *Klimavicius* case.

13:11:18   10    I will tell you that the government has asserted to

11    me and will say in their brief, I believe, that the

12    submissions that the Ninth Circuit found sufficient in

13    *Klimavicius*, which aren't described in the opinion, were not

14    from the head of an agency.

13:11:32   15    I will also tell you that two circuits have said that

16    that requirement is satisfied under CIPA if a person within

17    the agency authorized to deal with classification information

18    provides the declaration.  And the circuits are the *Rosen* case

19    from the Fourth Circuit, which is at 557 F.3d 192, and

13:12:01   20    specifically page 198, and the *El-Mezain*, E-L, hyphen,

21    M-E-Z-A-I-N, case from the Fifth Circuit, which is 664 F.3d,

22    467, and specifically page 521.

23    Those circuits said that you don't have to have the

24    head of an agency.

13:12:29   25    Now, they distinguished the Second Circuit's case in

13:12:34  1   *Aref*, A-R-E-F, which said you do have to have the head of the

2   agency because that's what the Supreme Court said in *Reynolds*.

3   But the Fourth Circuit and Fifth Circuit said, well, *Reynolds*

4   was a civil case not a criminal case, and other case law makes

13:12:53  5   clear the government's burden in a civil case is higher than

6   in a criminal case and CIPA doesn't require it therefore we're

7   not going to require it.  That's what the Fourth and Fifth

8   Circuits said.

9        I just want to make sure I'm acting on the basis of

13:13:05 10   the correct information.  You don't need to spend five pages

11   on this.  If you have anything to add beyond what those cases

12   say, add it.  If not, you can repeat your position based on

13   those cases.  This, to me, isn't a huge issue, I'm just

14   wanting to make sure I dot the I's and cross the T's as I rule

13:13:23 15   on the CIPA Section 4 motion.

16        Any questions on that first issue?

17        MR. PIMSNER:  No, Your Honor.

18        MR. CABOU:  No, Your Honor.

19        THE COURT:  Okay.  The second issue is, in my view,

13:13:32 20   the more important of the two.  And, incidentally, because of

21   my schedule and because of wanting to move this case along,

22   I'm going to require these briefs by a week from today,

23   simultaneously filed, no more than ten pages.

24        Here's the second issue.  The Ninth Circuit said in

13:14:04 25   the *Sarkissian* case -- which is S-A-R-K-I-S-S-I-A-N, at 841

F.2d 959, and specifically I'm looking at page 965 –– that a court ruling on a CIPA Section 4 issue can balance the defendant's interests against the government's interests.  And they specifically said that balancing is permitted in the same way that it was permitted in the *Roviaro* case, R-O-V-I-A-R-O.

But *Sarkissian* doesn't describe how a court does the balancing.  It just says on the issue of discovery under CIPA the court can engage in balancing.

Later cases reflect that same conclusion.  But none of them, that I have found at least, explains exactly how the balancing is to be conducted.  In fact, none of them do the balancing.  They usually resolve the issue ahead of time.

My understanding of the steps I need to follow in order to rule on the CIPA Section 4 motion are, first, I need to determine that the information is discoverable under the Federal Rules of Criminal Procedure or other law.  I have already done that for Category 1 and 2 documents in the order that is at Docket 63.

Second, I have to determine whether the government has properly invoked the privilege.  That goes to the issue I just asked you to brief.

Third, I then have to decide whether the evidence would be relevant and helpful to the defense, which is the language from *Roviaro*.

And then fourth I need to decide whether it should be

13:16:32   1   disclosed or can be withheld using the balancing test.  But,

2   again, I have found virtually no case law illuminating how I

3   balance.

4        So if I were to conclude that information in the

13:16:48   5   possession of the government were relevant and helpful and I

6   were to conclude that the government has legitimate interests

7   in keeping it confidential, how do I strike that balance?

8        I'm aware of the cases that say err on the side of

9   the defense, be cautious towards the defense.  I'm aware of

13:17:06  10   the cases that say relevant and helpful is a low threshold.

11   But I haven't found any cases that say how do I actually

12   balance the government's interest in confidentiality against

13   the defendant's interest in getting relevant and helpful

14   evidence.

13:17:19  15        There may not be case law on it, but that's what I'm

16   going to try to ask you to find and share with me by the 10th

17   of June.

18        My intent will be, with that briefing in hand, to

19   then make a decision on the CIPA Section 4 motion after I have

13:17:35  20   a chance to review whatever case law you can provide to me.

21        Any questions about that second issue?

22        MR. PIMSNER:  No, Your Honor.

23        MR. CABOU:  No, Your Honor.

24        THE COURT:  Okay.

13:17:58  25        Let's talk for a minute about the security clearance.

13:18:03  1          Mr. Cabou, what do you understand to be the status of

        2   security clearance for the members of your team?

        3          MR. CABOU:  Your Honor, I understand we're making

        4   progress on that.  Mr. Pimsner and I talked earlier today.  We

13:18:16  5   believe, although we're not certain, that mine is adequately

        6   processed to a point at this point, but I wasn't aware Scooter

        7   was -- Mr. Slade was going to be here today.  But we're

        8   emailing about that.

        9          I know that Mr. Ryerson's clearance investigation,

13:18:34  10   background investigation is in process because people tell us

        11   it is and his relatives have been calling saying "What's going

        12   on?" and I know Ms. Danneman's SF 86 form has been sent to

        13   her, she submitted it, and I think they're trying to work out

        14   logistics of fingerprints.  So we don't have clearances yet,

13:18:52  15   but the process is under way.

        16          THE COURT:  Okay.  It seems to me that once you get

        17   the clearance and the government conveys to you any

        18   information that's protected, we're going to need to have in

        19   place a protective order which will say that you're not going

13:19:09  20   to disseminate it beyond the people with clearance.  So I'm

        21   going to ask you all to work out a stipulated protective order

        22   and get it to me in the next week or two so that that doesn't

        23   hold up any disclosures to be made in the case.  And I trust

        24   you all can work out the terms of a suitable protective order.

13:19:29  25   Just submit it to me with a stipulation.  This would be

13:19:32  1    presumably a protective order under Rule 16(d).  And I'll be

2    happy to review it.

3              All right.  That's what I wanted to communicate

4    regarding the CIPA Section 4 motion that the government has

13:19:52  5    made and that is under advisement.

6              And I don't intend by those comments to signal how

7    I'm going to rule.  Frankly, I don't know how I'm going to

8    rule at this point.  But I want to have that briefing in place

9    so I can be fully informed when I do make a decision.

13:20:16 10              All right.  We have, as indicated earlier, received

11    today a motion -- well, a response from the government on the

12    defendant's motion to compel and a motion to seal the

13    government's response.  And then of course we have the

14    government's motion to compel.  That motion -- I'm sorry, the

13:20:45 15    defense motion to compel.  That is at Docket 142.  The

16    government's response is at 152.

17              Mr. Cabou, do you or your team members feel a need to

18    file a reply on this?

19              MR. CABOU:  Your Honor, I'm sorry to say we have not

13:20:58 20    received that document.  And I don't know why that is, but we

21    don't have it.

22              THE COURT:  All right.  Let's do this:  If you do

23    conclude you need to reply, file that by the 10th as well.  A

24    week from today.

13:21:12 25              MR. CABOU:  That's fine, Your Honor.

13:21:14  1          THE COURT:  That way I can address all of this stuff

       2     at the same time.

       3          If you don't feel the need to file a reply, just let

       4     my office and the government counsel know you don't need a

13:21:26  5     reply and we can turn to it earlier.

       6          We also have motions to seal.  There's a motion from

       7     the defense to seal Exhibit 1 to the motion to compel.  I'm

       8     assuming there's no objection from the government to that

       9     motion to seal?

13:22:06 10          MS. BROOK:  No objection, Your Honor.

      11          THE COURT:  Okay.

      12          So, Traci, we can grant the motion to seal which is

      13     at Docket 143.

      14          And I'm also assuming there's no objection from the

13:22:16 15     defense to the government's motion to seal its response to the

      16     motion to compel.

      17          MR. CABOU:  I think that's likely a fair assumption,

      18     Your Honor, but without having seen the document, I don't

      19     think I can fairly stipulate to that.  I'd be happy to try to

13:22:31 20     look at it quickly if someone has a copy.

      21          THE COURT:  I've got a copy, but it's got flu germs

      22     on it.  Want to take your chances?

      23          MR. CABOU:  Hobson's choice.

      24          THE COURT:  Look at hers, it's a safer copy.

13:22:53 25          MR. CABOU:  I'm going to ask Mr. Ryerson to take a

13:22:56  1    quick look at that while Your Honor continues.

2                    THE COURT:  All right, that's fine.

3              We then have the government's motion to extend time

4    to respond to the motion to compel that I assume is now moot.

13:23:09  5                MS. BROOK:  That's correct, Your Honor.

6                    THE COURT:  So we can deny the motion at Docket 147

7    as moot, Traci.

8              And the other matter that I have, and I didn't have

9    time to look through the docket before I walked in, but the

13:23:22  10   other one that was put in my stack is the motion to adjust

11   pretrial deadlines that we need to talk about.

12             Before we talk about that, are there other matters

13   that the government wants to raise today?

14                   MS. BROOK:  No, Your Honor.

13:23:37  15                THE COURT:  Mr. Cabou, how about you?

16                   MR. CABOU:  In light of everyone's schedule and

17   status, I'm going to say no.  But I guess pardon my ignorance

18   for asking, but I'm trying to understand if the ex parte -- if

19   the government has itself accessed the documents that are in

13:23:59  20   question in the CIPA Section 4 motion.

21                   THE COURT:  Yes.

22                   MR. CABOU:  Okay.  So the government trial

23   prosecutors have seen all those documents?

24                   THE COURT:  Yes.

13:24:10  25                MR. CABOU:  Okay.  And the status -- and they're

12

13:24:13 1  currently arguing about whether we will get to see those

2  documents.

3          THE COURT:  It's a CIPA Section 4 motion.  Yeah.

4  That's the purpose of CIPA Section 4.

13:24:23 5          MR. CABOU:  I think in the interest of -- Your Honor,

6  we've had a chance to review the copy of the motion that's

7  lodged at Document 152, and we're okay with that being filed

8  under seal.

9          THE COURT:  Okay.  So that means we'll grant the

13:24:40 10 motion to seal at Docket 153.

11         THE COURTROOM DEPUTY:  That would be 151.

12         MR. CABOU:  151.

13         THE COURT:  I show the motion to seal at document --

14         THE COURTROOM DEPUTY:  That's the motion -- another

13:24:55 15 motion to seal.  It's 151 for the motion to seal on the

16 response.

17         THE COURT:  Let's grant 151 and 153.

18         All right.  You were saying, Mr. Cabou?

19         MR. CABOU:  Your Honor, I just want to let everybody

13:25:15 20 know that we are considering whether there's a further motion

21 relating to the process by which the government's interests

22 are being advanced in the ex parte proceedings that may impact

23 scheduling, things like that.

24         THE COURT:  What's the issue?

13:25:31 25         MR. CABOU:  Candidly, Your Honor, the issue is that

13:25:34  1    the government's trial prosecutors have seen documents that we

2    understand are responsive to and otherwise produced pursuant

3    to the Court's order, but --

4            THE COURT:  I didn't say that.  What I said -- you

13:25:46  5    asked if they'd seen the documents that are the subject of the

6    CIPA Section 4 motion.

7            MR. CABOU:  Yeah.  So what I'm trying to understand,

8    and, again, if this is a discussion that just can't be had, I

9    respect that.  I'm finding my way through the CIPA process, as

13:26:05  10   everyone is in this case.  But the question is, from what we

11   know there's a subset of documents that is producible pursuant

12   to the Court's order of October 22nd.  What's now going on is

13   as to that subset of documents, which are either relevant and

14   material under Rule 16 or *Brady* or both or some combination of

13:26:28  15   legally required to be produced, the government's trial team

16   which has seen those documents is now arguing that national

17   security concerns should preclude us from seeing those

18   documents or should allow substitution for those documents.  I

19   think that's a fair recitation.  But if it's not, I would

13:26:45  20   appreciate being corrected.

21           THE COURT:  If it is, what's the problem?

22           MR. CABOU:  Well, the problem is we are considering

23   whether there's a tactical problem, due process problem,

24   ethical conflict, for lawyers who are ministers of justice who

13:27:02  25   have to produce information advocating the interests of

14

13:27:06  1    secrecy, which is a deeply personal interest advanced by the

2    head of the department, which Your Honor touched on somewhat

3    earlier today, and those are not unrelated concepts.  In the

4    interest of not surprising anyone, we have concerns.

13:27:20  5        THE COURT:  Well, let me ask you this, Mr. Cabou.  I

6    have encountered in more than one criminal case government

7    privilege claims.  I haven't had another CIPA case, but I've

8    had a number of cases where the government is asserting, as in

9    *Roviaro*, that it should be entitled to keep informants

13:27:43  10   confidential or that it should be able to keep sensitive law

11   enforcement techniques or equipment confidential.  And those

12   motions have always been brought by the prosecutors in the

13   case.  Where they have been advocating that some information

14   in the case that may be relevant to the case be withheld from

13:28:05  15   disclosure, or at least temporarily withheld in the case of

16   informants.  How is that any different?

17        MR. CABOU:  Well, Your Honor, I would say, and it

18   wasn't my intention to drag us into a merits discussion, but

19   what I would say is that those are law enforcement interests.

13:28:20  20   And the interests in secrecy are manifestly not law

21   enforcement interests.  They're national security interests,

22   they're secrecy interests, they're state secrets, they derive

23   from a common law privilege, but they're not law enforcement

24   interests.

13:28:33  25        I would also note there are several contexts --

15

```
13:28:36   1        THE COURT:  Assuming you're right about that, I have
           2   to ask:  So?  Why does that make a difference?  I'm just
           3   trying to understand the concept here.
           4        MR. CABOU:  Because we believe, again, if we were
13:28:47   5   ready to --
           6        THE COURT:  I'm not going to hold you to your
           7   argument being completely made here, I'm just trying to
           8   understand the issue you're raising.
           9        MR. CABOU:  The interests in secrecy, which from
13:28:58  10   Reynolds and Sedaghaty, we understand to be valid based on a
          11   claim made by the head of the department, or at least someone
          12   with authority of the head of the department, depending on the
          13   circuit split, are about a judgment that the government has an
          14   interest in secrecy.  It's not about law enforcement.  It's
13:29:19  15   not about this investigation.  It's about something else.  And
          16   there are lots of contexts, some in the privileged context,
          17   where separate lawyers advance separate interests, especially
          18   where there is a tactical advantage to be gained by
          19   information to which the defense does not have access.
13:29:39  20        So, for example, under Rule 12.2 where a defendant
          21   makes an affirmative defense of mental illness, oftentimes
          22   there are separate lawyers appointed for the government,
          23   they're DOJ lawyers but they're walled from the trial team,
          24   who participate in the briefing and merits arguments as to the
13:29:57  25   defendant's compulsory examination under Rule 12.2.
```

16

13:30:02  1        For example, in cases raising claims of -- because

2    that could implicate the defendant's right to remain silent

3    and other things.  Information that comes out of mental health

4    exam could taint the prosecution; they could have information

13:30:16  5    they shouldn't have.

6        Similarly, in questions where there are questions of

7    attorney-client privilege and where some government agent or

8    lawyer might come into contact with information that's

9    protected by a privilege steps are often taken to employ a

13:30:28 10    taint team, a firewall team, or some other barrier so as to

11    avoid affording a tactical advantage to the government lawyers

12    charged with prosecution simply because of an interest of the

13    government, which we do not challenge the validity of the

14    interest.

13:30:44 15        The question is whether it's appropriate and fair to

16    have one set of lawyers advocating every interest the

17    government serves, including interests in making sure Mr. Turi

18    gets a fair trial and has the chance to use all of the

19    information that he's entitled to have.  And while we

13:30:59 20    certainly wouldn't make the claim lightly, it is something we

21    are working on.  If we come to the conclusion it is a

22    colorable and in fact proper claim, we anticipate filing that

23    motion.

24        THE COURT:  Well, you are certainly free to file the

13:31:12 25    motion and I'll rule on it.

13:31:13   1          The two examples you gave, however, where somebody on

2      the prosecution side of the case is going to come into

3      possession of confidential medical information from the other

4      side or is going to see attorney-client communications from

13:31:25   5      the other side is quite different because that's information

6      from the other side that the prosecutors wouldn't be entitled

7      to receive.

8          This is quite different.  This isn't information from

9      the defense that they shouldn't see and they're going to see

13:31:44  10      and then could use in some way in the prosecution.  This is

11      information from the government.

12          I've just never heard the notion that there needs to

13      be some sort of wall constructed on the government side of the

14      case when you're dealing with some kind of government

13:31:58  15      privilege.

16          MR. CABOU:  The fact that the government privilege --

17      the government clearly has a privilege, states secret

18      privilege.  But that privilege, especially under certain

19      circumstances in this case, seems to have left the government

13:32:10  20      lawyers in a very difficult position of having certain

21      information that they're trying to keep from us, not -- we're

22      not suggesting there aren't valid reasons for them trying to

23      keep it from us, but which they're trying to keep from us,

24      which they're then using against us, too.  It's that dynamic

13:32:26  25      that has caused us great concern.

13:32:29  1          THE COURT:  Okay.  You can file your brief.  But,

2     again, I will tell you I see that all the time when law

3     enforcement privileges are at stake.  It's information the

4     prosecutors know, the defense doesn't know, the prosecutors

13:32:41  5     don't want the defense to know.  And every time I've seen it

6     litigated, it's by the prosecution team.  And it's based on a

7     government privilege.  And it may be information that's

8     relevant to the case.  But I've never heard it suggested that

9     there needs to be a wall.  So you'll be educating me if

13:32:58 10     there's law that supports that.

11          I'm just saying that so you can at least know the

12     perspective that I'll initially have when I pick up the brief.

13          MR. CABOU:  We appreciate that, Your Honor.

14          MR. PIMSNER:  Your Honor --

13:33:08 15          THE COURT:  Mr. Pimsner?

16          MR. PIMSNER:  -- may I be excused?  Ms. Brook will be

17     able to handle this --

18          THE COURT:  Yeah, that's fine.

19          MR. PIMSNER:  Thank you.

13:33:16 20          (Mr. Pimsner exited the courtroom.)

21          THE COURT:  So how soon are you thinking that you

22     would file such a motion?

23          MR. CABOU:  By the end of the week.

24          THE COURT:  Okay.  Why don't you file it, and we'll

13:33:30 25     set another status conference so I'll be happy to look at it

19

13:33:35  1   if you decide it's warranted.

2            MR. CABOU:  We appreciate that, Your Honor.

3            THE COURT:  In terms of the schedule --

4       Traci, could you pull up the latest case management

13:33:46  5   schedule.  I couldn't get the computer to do that either.

6       You say at the end of your motion defendants propose

7   the development of the new schedule be taken up at the

8   currently scheduled June 3rd status conference.  Do you have a

9   new schedule to propose?

13:34:11  10      MR. CABOU:  I don't, Your Honor, and I spoke with

11  Mr. Pimsner before he had to leave.  I have no reason to think

12  he's not communicating in the best of faith, but simply

13  because of the uncertain nature of the CIPA proceedings, on

14  top of the uncertain nature of the classification and

13:34:24  15  clearance proceedings, I'm not sure either of us has a good

16  idea what to propose.

17      I'd be happy to confer with Ms. Brook after the

18  hearing today, talk about something.  I'm sure both the

19  government and I would be happy to hear from the Court about

13:34:40  20  its suggestions under the circumstances.

21      THE COURT:  I'm assuming the reason you filed the

22  motion when you did, Mr. Cabou, was because of the coming June

23  1st deadline on experts, which has now passed so you've

24  forfeited your experts.

13:34:54  25      Just joking.

13:35:00   1        Yeah.  I mean obviously I understand why you're not

2    in a position to meet that deadline.  But what I don't want to

3    do is say, okay, the deadline is open ended and extend it.  I

4    want to stick with this schedule and I want to work still

13:35:17   5    towards a September trial.  I know there's issues about

6    whether we can get that accomplished.

7        So what I do think we ought to do is talk for a

8    minute about the overall schedule.  We've got the expert

9    schedules; that's one part of it.  But another part is we set

13:35:42  10    a July deadline for foreign evidence and depositions, for

11    substantive procedural motions.

12        Here's the issue that's in my mind as I look at this.

13    I'm assuming there's much to the defense that isn't dependent

14    upon the government's production in this case, that you're

13:36:17  15    doing your own investigation, preparing your defense,

16    identifying issues that need to be resolved.  What is your

17    current thinking on those motion deadlines in late July?

18        MR. CABOU:  Your Honor, much of our investigation,

19    unsurprisingly, relates to our affirmative defense.  Much of

13:36:44  20    our investigation is therefore inextricably tied to the

21    clearance process, both because of the documents, but also

22    because we anticipate needing to speak with people who could

23    be possible experts on topics that might be classified.  That

24    might require us to seek an order from Your Honor permitting

13:37:05  25    those people to share with us the classified information they

13:37:08  1    have so that we may vet them as experts and it may require us

       2    to provide notice under CIPA of our intent to introduce

       3    classified information.

       4         So we're eager to conduct those interviews and vet

13:37:21  5    those experts.  We have some people in mind and believe that

       6    they will speak with us, given the appropriate procedural and

       7    substantive safeguards.  But until we get to the end of --

       8    until we resolve the classification issue, I'm happy to have

       9    someone correct me if I'm wrong in some of the assumptions

13:37:42 10    that underlie this statement, we just don't know.

      11         THE COURT:  Mr. Cabou, explain to me, if you would,

      12    what you think it is that needs to happen, besides your

      13    getting security clearances, for you to do the interviews you

      14    think you need to do to prepare the defense.

13:40:34 15         MR. CABOU:  I believe, Your Honor, and perhaps

      16    Mr. Slade would have some information on this, but I believe

      17    that as to each agency that might be the guardian of the

      18    information that we would seek to discover, there's a process

      19    to seek that agency's permission to have it released.

13:40:51 20         If they then decline, which I would anticipate them

      21    declining, then we would seek a judicial order to compel that

      22    person to -- to grant permission to that person to discuss

      23    that with us.

      24         We have attempted to communicate with the government

13:41:04 25    and ask at least what departments are involved so that we can

13:41:07  1   start that process, but the government will not tell us what

2   departments are involved.

3        THE COURT:  Ms. Brooks, do you know whether the

4   procedure that Mr. Cabou just described is correct?

13:41:23  5        MS. BROOK:  I don't know the procedure by which he

6   would go through to obtain interviews, if any were of issue.

7        What Mr. Cabou just asked me a moment ago was where

8   documents are from and my response to him was that the

9   government can't confirm or deny the existence of any

13:41:45 10   documents.

11        THE COURT:  Mr. Slade, do you know whether there's a

12   procedure for getting interview clearance?

13        MR. SLADE:  I believe Mr. Cabou is referring to the

14   *Touhy* letter process, but I rely on the government to brief

13:42:00 15   that process.

16        THE COURT:  Is that what you're relying on?

17        MR. CABOU:  Yes, there are regulations in the CFR

18   that each agency with custody over classified information is

19   promulgated to go as far as we can in the agency process

13:42:15 20   before coming to the judicial process.

21        THE COURT:  Well, if you know some of the people you

22   want to talk to, as you've already indicated, is there some

23   reason that process can't be under way?

24        MR. CABOU:  I -- I believe the answer to that is no

13:42:27 25   and it is partially under way.  We have reached out to at

13:42:35  1   least one agency letting them know that their information is

2   in issue.  We have had a hard time getting a response.  But we

3   will reinvigorate our efforts.

4        THE COURT:  What I want to avoid is we've already had

13:42:51  5   a significant delay in this case in the production of

6   documents.  I want to avoid having a long delay for every

7   other category of information that needs to be addressed.  So

8   what I'm inclined to do is this:  I looked at my calendar just

9   now to find a time to set a status conference where we can get

13:43:13 10   all these issues on the table and try to figure them out.  I

11   was hoping early July, but my schedule won't allow it to

12   happen until July 24th, which is the date we're going to have

13   motions.

14        So what I think I'd like to do is propose that we

13:43:28 15   have a status conference on July 24th with the idea that by

16   that point in time I will have ruled -- in fact, I will have

17   ruled more than a month before that on the CIPA Section 4

18   motion, so at least that motion will be resolved.  I will have

19   ruled on the motion to compel that the defense has filed.  So

13:43:56 20   information that's going to come out of the CIPA Section 4

21   motion and the motion to compel presumably will be known to

22   the parties in advance of July 24th.

23        The idea would then be to have the defense move

24   forward on getting interviews set and be prepared on July 24th

13:44:17 25   to report on what exactly has happened, where, if anyplace, I

13:44:22  1   need to intervene, so that we don't have this process sort of

2   continue in dribs and drabs over the course of the next year.

3   That's what I want to avoid.  I want us to keep moving the

4   process forward.

13:44:37  5   Do you see a problem with that on either side?

6   MR. CABOU:  No, Your Honor.  We're happy to do

7   anything we can do to move it along, so we'll be ready on the

8   24th to bring Your Honor any issues we have.

9   MS. BROOK:  That sounds good to the government.

13:44:56  10   THE COURT:  All right.  I'm inclined to include in an

11   order related to that status conference a requirement that the

12   government complete the security clearance process by the end

13   of June so that -- I see two heads shaking no; I see three

14   smiling -- so that we know that's not a holdup to having this

13:45:20  15   full discussion on the 24th.

16   Now, tell me -- you two who are shaking heads, why is

17   this not a good idea?

18   MS. BROOK:  If you would like me to confer, I can

19   report.

13:45:32  20   THE COURT:  That's fine.

21   (Ms. Brook and Mr. Slade confer.)

22   MR. SLADE:  Your Honor, I can speak.  We're

23   undertaking the process for the Court and we have already put

24   a rush, as much as we can, on the process.  It is

13:45:57  25   significantly streamlined and rushed for the Court.  I can't

13:46:02   1   promise you it will be complete at that point, but we'll do

2   our best.

3           THE COURT:  What were you going to add, Ms. Brooks?

4           MS. BROOK:  Simply that although it is a frustrating

13:46:14   5   process and the government wishes they could make and avow to

6   the Court to those ends, it's simply out of our hands.

7           THE COURT:  Whose hands is it in?

8           MS. BROOK:  The agencies that are able to grant the

9   clearances.

13:46:32  10           MR. SLADE:  It's the -- my office is the adjudicator

11   of the clearance.  The process is conducted by the FBI, based

12   on their regular -- standard regulations for any government

13   employee.

14           THE COURT:  I'm assuming, Mr. Cabou, that the *Touhy*

13:47:27  15   process you have to go through necessarily means that who

16   you're going to be interviewing or want to interview is not a

17   defense confidential matter, it's going to be known to the

18   government.  Is that correct?

19           MR. CABOU:  That's part of our problem, Your Honor,

13:47:39  20   and, frankly, that's one of the reasons why we have done what

21   we can but we're still trying to balance that with wanting to

22   protect that part of our strategy that we're allowed to

23   protect.  So, frankly, we're going to have to go think about

24   how we push for the information we want while also not

13:47:59  25   disclosing strategy that at this point is still very

26

13:48:02   1   preliminary.  We're still trying to figure out if there's good

2   information or bad information out there.  We believe there's

3   lots of good information, but to the extent that we're allowed

4   to do that without the government overlaying their watchful

13:48:17   5   eye on every single thing we're trying to do, we're

6   brainstorming how to make that happen.

7            THE COURT:  Well, again, a general observation.  It

8   does seem to me that when the defense in a criminal case is

9   seeking information from the government, whether in the form

13:48:33 10   of a Rule 16 disclosure or interviewing a government employee

11   or former government employee that has sensitive government

12   information, outside of this case when that's happened, the

13   government has known about it.  It seems to me there are

14   limits on the confidentiality a defense can put around its

13:48:55 15   case when it has to get information from the government.

16            MR. CABOU:  Your Honor, certainly someone in the

17   government and some competent skilled specialist lawyer is

18   entitled to argue on behalf of the government to its interest

19   in secrecy.  Whether those are also the same people who are in

13:49:11 20   charge of charging and prosecuting Mr. Turi is a very open

21   question in our mind.  And rather than kind of go through it

22   again, I promise you we will bring that matter to the Court

23   very promptly.

24            THE COURT:  Well, but that's a different issue, it

13:49:24 25   seems to me.  If your argument on one hand is going to be,

27

13:49:26   1   look, Mr. Pimsner and Ms. Brooks and the folks from DC who are

2   on this case shouldn't know who we're interviewing, that's

3   quite different from what you were talking about a minute ago,

4   which is they shouldn't see documents we have requested from

13:49:40   5   them that they want to argue are confidential.

6          MR. CABOU:  Well, Your Honor, as to the document

7   issue, I would say it's not from them.  It's only "them" if

8   the government is the government as a whole.

9          THE COURT:  But you requested it from them.  You sent

13:49:54  10   them a letter.  You sent the Rule 16 letter to the person

11   across the aisle from you.  They know exactly the categories

12   of information you're seeking.  How is that somehow a defense

13   secret?

14          MR. CABOU:  Your Honor, if the issue is they're in

13:50:10  15   possession of documents that they are otherwise required to

16   produce, in other words by Rule 16 or some other

17   constitutional standard in case of exculpatory evidence, and

18   they are at the same time arguing to withhold those documents

19   from us based on a claim of classification, that's a problem.

13:50:28  20   That puts them, even with the best of intentions, in -- you

21   know, there's significant moral hazard caused by that

22   situation, and --

23          THE COURT:  How is that different from any lawyer in

24   a case arguing a privilege?

13:50:43  25          MR. CABOU:  Number one, I would say --

13:50:44  1          THE COURT:  It happens all the time.

       2          MR. CABOU:  I don't think it happens all the time.  I

       3     think it's fairly limited under these circumstances to

       4     situations where there's classified information that has been

13:50:54  5     ordered -- if it exists, has been ordered produced and is

       6     within the scope of the discovery obligation that the

       7     government has, or presumably has.

       8          And, again, a lot of the specifics of the argument

       9     depend on things we don't know, but I would point out one

13:51:14 10     specific thing that happened at least in passing at the March

      11     4th status conference, which was Mr. Mackie made reference on

      12     the record to a conversation with T.S.  He said it on the

      13     record.  I think it was in passing.  I don't think he meant it

      14     as anything.  But if they've spoken with T.S., they are

13:51:33 15     actively investigating our affirmative defense while at the

      16     same time withholding from us the fruits.  If they've spoken

      17     to him, we're entitled to know that.  But they say we don't

      18     get to know, and they're citing it as a reason why we

      19     shouldn't get more information.  And that's a problem.

13:51:50 20          So -- but to bring us back to the issue of seeking

      21     information from the agencies -- and "agencies," small "A" --

      22     we will by next week have a handle on the *Touhy* process as to

      23     at least the two departments we know to be involved based on

      24     reasonable inference, which are the Agency, capital A, and

13:52:14 25     State Department.  If there are other agencies, we don't know

29

about them right now, so we wouldn't know how to move the
*Touhy* process forward.

THE COURT:  Okay.  What I want to do is set this
status conference for 2 p.m. on July 24th.  And we'll reflect
in the minute entry that the following things will be done in
preparation for it:  As I've already indicated, I will have
ruled on the CIPA Section 4 motion by then.  I will have ruled
on the motion to compel that the defense has filed and the
government has responded to.

I'm going to say in my minute entry that I'm urging
the government to complete the security clearance process by
July 30th so that you can use that as for whatever benefit.
By June 30th.

I'm going to require the defendant move forward on
the witness interview process before July 20th, including
issuance of *Touhy* letters, to the extent you can, so that we
can talk on July 24th as to exactly where that process is and
whether I need to get involved.

If there's going to be a motion filed on this
government conflict issue that you've identified, Mr. Cabou, I
think filing it in the next week or so would be good.  That
way we can get that briefed and decided and have that issue
out of the way by July 24th.

And in terms of the overall schedule, I'm going to
hold off on the discovery -- I'm sorry, the expert disclosure

13:54:03   1   issues until that June –– that July 24th hearing.  So the

2   initial expert disclosures of the defense that is now due on

3   June 1st, the rebuttal expert disclosures that are due on June

4   29th and July 24th will be held in abeyance until we can talk

13:54:32   5   on July 24th about where we are in the case overall.

6            I am going to keep in place the deadline for filing

7   motions regarding foreign evidence or depositions or

8   substantive or procedural motions by July 24th, but with the

9   caveat that if the developments in the case make a motion

13:55:00  10   appropriate after that date, I'm not going to prevent you from

11   filing it.  But I want things that can be filed to be filed by

12   that date.

13            And then on July 24th we'll talk about the rest of

14   the schedule, which is August and September dates, in light of

13:55:14  15   where we are in this overall discovery issue.

16            Any questions or additions to any of that?

17            MS. BROOK:  No, Your Honor.

18            MR. CABOU:  No, Your Honor.

19            THE COURT:  Okay.  Are there other matters you all

13:55:29  20   want to raise today?

21            MS. BROOK:  No, Your Honor.

22            MR. CABOU:  Can I just ask if the government has

23   completed its production of nonclassified discovery?

24            MS. BROOK:  Yes, with the caveat that there were a

13:55:43  25   couple outstanding issues we had communicated with and the

13:55:47  1    government was double checking on them.  So, yes, with that

2    caveat.

3              MR. CABOU:  Okay.

4              THE COURT:  Anything else you want to raise?

13:55:56  5              MR. CABOU:  Not at this time, Your Honor.  I think

6    the government and I need to confer before we do that.

7              THE COURT:  Okay.  Thanks very much.

8              MR. CABOU:  Thanks very much.

9              MS. BROOK:  Thank you.

13:56:09  10       (End of transcript.)

11                         *  *  *  *  *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3          I, PATRICIA LYONS, do hereby certify that I am duly

4    appointed and qualified to act as Official Court Reporter for

5    the United States District Court for the District of Arizona.

6

7          I FURTHER CERTIFY that the foregoing pages constitute

8    a full, true, and accurate transcript of all of that portion

9    of the proceedings contained herein, had in the above-entitled

10   cause on the date specified therein, and that said transcript

11   was prepared under my direction and control, and to the best

12   of my ability.

13

14         DATED at Phoenix, Arizona, this 31st day of March,

15   2016.

16

17

18

19

20                         s/ Patricia Lyons, RMR, CRR
                           Official Court Reporter
21

22

23

24

25